UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

UNITED STATES OF AMERICA

     -against-                              No. 16-CR-0377(PAE)

JOHN AFRIYIE,

       Defendant.


-------------------------------------------------------------- X


## DEFENDANT AFRIYIE'S SENTENCING MEMORANDUM



**MITCHELL DINNERSTEIN**
Attorney for Defendant JOHN AFRIYIE
20 Vesey Street
Suite 400
New York, New York 10007
212-925-0793

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………i

TABLE OF AUTHORITIES……………………………………………..ii

PRELIMINARY STATEMENT …………………………...........................2

   A. OBJECTIONS TO THE PSR……...…………………….................3

      1. Loss/Gain…………………………………...........................3

      2. Abuse of Trust………………………………………………7

      3. Obstruction………………………………...........................9

      4. Restitution……………………………………………...…10

   B. FORFEITURE……………………………………………...…11

   C. RESTITUTION ..............................................................................15

   D. DEFENDANT'S BACKGROUND……………………….............16

   E. 3553 (a) FACTORS ………………………………………….....21

   F.CONCLUSION……………………………………………….28

# TABLE OF AUTHORITIES

## FEDERAL CASES

United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006).....23, 24

United States v. Algahaim, 842 F. 3d 796 (2d. Cir. 2016)......................4

United States v. Cordoba-Murgas, 233 F.3d 704, 709 (2d Cir. 1999) ..........6

United States v. Cuti, 778 F.3d 83, 91 (2d Cir. 2014) ...........................11

United States v. Dioguardi, 492 F.2d 70, 83 (2d Cir. 1974)....................12

United States v. Gupta, 11-Cr -907 (SDNY) (JSR), ....................................3

United States v. Gupta, 904 F.Supp.2d 349, 355 (S.D.N.Y. 2012).........25, 27

United States v. Hixon, Jr., 14-CR-227)(S.D.N.Y., 2014).......................8

United States v. Horne, 474 F. 3d 1004 (7th Cir. 2007)...........................6

United States v. Huggins,. 844 F. 3d. 118, 124 (2d. Cir. 2016)..................8

United States v. Jolly, 102 F. 3d 46, 48 (2d Cir. 1996). ...........................7

United States v. Jones, 648 F. Supp. 241, 243 (S.D.N.Y. 1986) ....................12

United States v. London, 13-CR- 379(GW) (C.D. Cal., 2013)....................8

United States v. Maynard, 743 F.3d 374 (2d Cir. 2014). .........................10

United States v. Schlei, 122 F.3d 944, 975-980 (11th Cir. 1997)................12

United States v. Sturdivant, 244 F. 3d 71 (2d. Cir. 2001)..................5, 6, 13

United States v. Watts, 519 U.S. 148, 156 (1997)..................................6

United States v. Wright 160 F. 3d 905, 910 (2d. Cir. 1998)......................8

FEDERAL STATUTES

15 U.S.C. § 78(b).............................................................................2

18 U.S.C. § 1343.............................................................................2

18 U.S.C. § 3553.......................................................................passim

18 U.S.C. §3663A (b) (4)...............................................................10

UNITED STATES SENTENCING GUIDELINES  (U.S.S.G.)

2B1.1(I)......................................................................................3

§2B1.4.........................................................................................3

§3B1.3....................................................................................3, 7, 8

§3C1.1, Comment. (N, 4(D)............................................................. 3

§3C1.1, Comment. (N. 4(E).............................................................9

FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 32.2(b) (5)...........................................................................15

OTHER AUTHORITIES

Imprisoning White Collar Criminals?  23 S. Ill. U. L. J.485 at 492 (1995). ......24

Insider Trading Annual Review (Morrison & Foerster  LLP 2014).....................7

Wiggin & Dana, Second Circuit Advisory (Mar. 24, 2014)..........................10

Punishment Purposes, 58 Stanford L. Rev. 67 at 80 (2005)..........................24

**PRELIMINARY STATEMENT**

This memorandum of law is submitted on behalf of defendant John Afriyie, who is scheduled to be sentenced on July 26, 2017.  Mr. Afriyie was convicted by a jury on January 30, 2017 of securities fraud, in violation of 15 U.S.C. § 78(b), and wire fraud, in violation of 18 U.S.C. § 1343.  Having presided over Mr. Afriyie's trial, this Court is aware that, following Mr. Afriyie's conviction, this Court assigned Mitchell Dinnerstein, Esq., to substitute for Mr. Afriyie's assigned trial counsel who was permitted to withdraw.

As a result of counsel's post-trial entry into this case, and based upon counsel's review of the trial record, conversations with Mr. Afriyie and his immediate family, and counsel's own investigation, counsel respectfully submits that this sentencing memorandum may help provide the Court with a fresh look sense of who Mr. Afriyie is, where he comes from, and how he comes to stand before this Court for sentencing upon his conviction of serious federal offenses, all factors the Court must consider pursuant to 18 U.S.C. §3553 in determining the appropriate sentence for this now-29-year-old, defendant with a  prior unblemished record.

Of all the direct and collateral consequences Mr. Afriyie will surely suffer as a result of his conviction, this Court can be certain of at least one life-changing consequence for Mr. Afriyie.   Regardless of the sentence imposed, Mr. Afriyie's once promising career in the financial services industry is over.

The Probation Department's calculation under the United States Sentencing Guidelines ("USSG"), if accepted by the Court, produces a prison term of 78 to 97 months, or six and one-half to more than eight years. Such a sentence for Mr. Afriyie, even at the low end of the

2

Guidelines range, would be unnecessarily harsh and punitive, and would ill-serve the interests of justice and the public.

Instead, counsel respectfully urges the Court to consider imposing a non-USSG sentence not exceeding a term of imprisonment of a year and a day. Such a sentence would be serious punishment for Mr. Afriyie, especially in light of the fact that he has already been detained for more than six months even though he was not a flight risk or a danger to the community. Further, his assets have been restrained, and possibly forfeited, depriving Mr. Afriyie of the ability to retain counsel of his choice both at trial and on appeal.

### A. Objections to the PSR.

The Probation Department found Mr. Afriyie's adjusted offense level to be 28, resulting from a base offense level of 8 for insider trading (§2B1.4(a); a 16-level enhancement for "gain" in the amount of $1.53 million, pursuant to USSG §§2B1.4 and 2B1.1(I); a two-level enhancement for "abuse of a position of trust," pursuant to USSG §3B1.3; and a two-level enhancement for obstruction of justice, pursuant to USSG §3C1.1, Comment. (n,4(D)).

The defense objects to the PSR's USSG analysis and calculation.

### 1. Loss/Gain.

This case is a classic example of the distorting and much criticized effect that "loss" or "gain" has on sentencing under the USSG in the financial crimes context. Because of the amount of the gain ($1.53 million), Mr. Afriyie is subject to a 16-level enhancement, resulting in a USSG range that, in our view, overstates the seriousness of his offense.

The unfairly distorting effect of loss or gain in financial crimes has been the subject of much critical comment. In *United States v. Gupta*, 11-Cr – 907 (SDNY) (JSR), a highly publicized insider trading case, Judge Rakoff questioned whether the defendant's profit should

3

drive the sentence rather than the defendant's conduct.    Judge Rakoff's observation in *Gupta* is equally true here.    If the PSR's analysis were to be adopted, Mr. Afriyie's sentence would be determined overwhelmingly by a 16 point enhancement because of a largely fortuitous "gain" of $1.53 million.  But because of that "gain," Mr. Afriyie has already suffered considerable punishment; he has been charged with and tried on serious federal crimes when a small or no gain might well have subjected him only to an SEC civil enforcement action.    Moreover, because of Mr. Afriyie's offense conduct, his base offense level begins at 8, and not 6 or 7, as it would in all other fraud cases.   In short, Mr. Afriyie has already suffered a serious measure of punishment because of the nature of the offense and the increased base offense level.    The imposition of an additional 16-level enhancement because of the size of the "gain" in effect overstates the seriousness of the offense.

Judge Newman also addressed this issue in *United States v. Algahaim*, 842 F. 3d 796 (2d. Cir. 2016), concluding that a non-USSG sentence could be appropriate where the USSG sentence is determined by the amount of loss resulting from the defendant's conduct and not his base offense level.  In *Algahaim*, the base offense level was 6, but the loss produced an enhancement of 16 or 18, depending on which defendant was considered.    Judge Newman questioned the wisdom of skewing sentencing so heavily based on loss:

> "One aspect of the sentencing warrants further consideration. The calculation of Murshed's adjusted offense level, driven by the monetary loss amount, increased his base offense from six to eighteen, a three-fold increase. Similarly, the calculation of Algahaim's adjusted offense level, also driven by the loss amount, increased his base offense from six to sixteen. We recognize that these increases complied with the Guideline Manual. We also recognize that the Commission had the authority to construct a set of guidelines that used loss amount as the predominant determination of the adjusted offense level for monetary offenses. . .
>
> [But] [w]here the Commission has assigned a rather low offense level to a crime and then increased it significantly by a loss enhancement, that

4

combination of circumstances entitles a sentencing judge to consider a Non-Guideline sentence."

*Id.* at 800.

Of course, the Court has the ability to impose a non-USSG sentence to remedy the dramatic and arbitrary distortion resulting from a process driven by the amount of loss or gain instead of the defendant's conduct.

Moreover, the Court has discretion to determine the sentence based on the §3553(a) factors, rather than the formulaic method of the USSG, where, as here, the amount of gain or loss would dramatically and unfairly overstate the seriousness of the offense. Indeed, the prejudice to Mr. Afriyie in relying on the USSG would be compounded by use of the civil standard of proof, i.e., preponderance of the evidence, in determining the amount of his gain since, under the Court's instructions, there is no way to know whether Mr. Afriyie was convicted of the offense based on more than one trade.

Each count of the indictment consisted of 26 separate trades, any one of which, under the Court's instructions, the jury was told it could rely upon as a basis to convict.[1] Without a special verdict --- and none was sought by the Government --- there is no way to determine whether the jury convicted on the basis of one, some or all of those trades. As a result, and consistent with the rationale of *United States v. Sturdivant*, 244 F. 3d 71 (2d. Cir. 2001), the only way that Mr. Afriyie's sentence can be enhanced based on trades beyond the one with the smallest amount of gain is through the doctrine of relevant conduct, which the Government generally need only

---

[1] This Court instructed the jury as follows: "For you to return a guilty verdict on that count (securities fraud) the Government need not prove and you need not find that the elements of this offense had been met with respect to each of the trades allegedly made or caused by the defendant. *Proof beyond a reasonable doubt of all three elements of the offense with respect to any one trade is enough.* However to return a guilty verdict, you must unanimously agree as to at least one particular trade with respect to which all of the elements of the offense have been met." T. 1002-03 (emphasis added).

prove by a preponderance of the evidence.[2]  The disparity between the USSG ranges, depending

on whether the relevant conduct doctrine is invoked, would be a classic example of the tail

wagging the dog, in violation of the principles embodied in 18 U.S.C. §3553(a) and the Due

Process Clause.  As Judge Posner noted in *United States v. Horne*, 474 F. 3d 1004, 1007 (7th Cir.

2007):

> "A judge might reasonably conclude that a sentence based almost
> entirely on evidence that satisfied only the normal civil standard of
> proof would be unlikely to promote respect for the law or provide
> just punishment for the offense of conviction".

*See also United States v. Watts*, 519 U.S. 148, 156 (1997) (pre-*Booker*, the Supreme Court

expressly left open the question "whether, in extreme circumstances, relevant conduct that would

dramatically increase the sentence must be based on clear and convincing evidence"); *United*

*States v. Cordoba-Murgas*, 233 F.3d 704, 709 (2d Cir. 1999) (even pre-*Booker*, "the factual

finding by a preponderance of the evidence is a preliminary step susceptible to adjustment").

Accordingly, this Court should, at a minimum, determine Mr. Afriyie's sentence based solely

upon the §3553(a) factors, and apply at least a clear and convincing standard before enhancing

Mr. Afriyie's sentence on the basis of trades for which he may well have not been convicted, and

possibly even acquitted.[3]

---

[2]  In *Sturdivant*, the defendant was convicted on a duplicitous count charging two distinct narcotics transactions.  The jury was instructed that it could convict on what would otherwise be a duplicitous count if it unanimously found that the defendant participated in either of the two transactions.  As a result, the jury's guilty verdict was ambiguous because it did not reveal whether the jury found the defendant guilty of one, the other or both narcotics transactions, and only in the latter case would the defendant have been subject to a mandatory minimum prison term.  The Second Circuit held that sentencing the defendant on the assumption that he had been convicted on both transactions was plain error, and remanded for resentencing despite the absence of an objection, directing that the resentencing should be limited to the least serious of the two narcotics transaction because the defendant was entitled to the benefit of the doubt when it was impossible to tell which transaction was the basis for the jury's verdict.

[3]  The PSR's "gain" amount cannot be confirmed by the amount of the jury's forfeiture verdict because the jury was instructed by the Court not to consider guilt in determining the forfeiture amount, but only to trace proceeds in the brokerage accounts to particular charged transactions, and the jury was told it only had to find the connection or traceability by a preponderance standard.  (T. 1149)  As a result of the Court's instructions on forfeiture, the jury could have returned, and probably did, a forfeiture verdict based on transactions for which Mr. Afriyie was not

## 2.  Abuse of trust.

The Probation Department concluded that Mr. Afriyie "used his position to facilitate the offense, [and therefore] a two-level enhancement is applicable for abuse of trust," pursuant to § 3B1.3.  PSR ¶ 49.  The PSR is mistaken.  The USSG's abuse of trust enhancement is inapplicable to Mr. Afriyie.

Indeed, upon defense objection, the PSR revised its report by agreeing that Mr. Afriyie was not a "hedge fund professional." Instead, the PSR now calls Mr. Afriyie a "financial professional." PSR ¶ 50.  In fact, Mr. Afriyie's employer, MSD Capital, was a family-owned entity created for the sole purpose of investing or lending Dell family money.  T. 164.  Mr. Afriyie's position or status at MSD Capital was solely that of a "junior analyst," an entry level position with no discretion, and which required his participation in a "two year program to kind of train a junior analyst that may or may not be a full-time position after the program ends.  The majority of the time someone [a junior analyst] may go on to work somewhere else."  T. 178.

Whether Mr. Afriyie held a position of private trust is a question of law.  *United States v. Jolly*, 102 F. 3d 46, 48 (2d Cir. 1996).  But to be subject to an "abuse of trust" enhancement, Mr. Afriyie would have been required to act within or occupy a much broader fiduciary capacity than as an entry level "junior analyst."  Moreover, the higher base offense level of 8 for insider trading takes into account the element of disloyalty.  Enhancing Mr. Afriyie's sentence for abuse of a position of trust would be unwarranted.

No case found in which a defendant occupied a position as low as Mr. Afriyie's position at MSD ever suffered an enhanced sentence for abuse of trust in an insider trading case. See *Insider Trading Annual Review* (Morrison & Foerster  LLP 2014).  (Exhibit 1)  The Morrison & Foerster publication lists 31 federal cases involving criminal convictions for insider

convicted.  See Section B, *infra*.

7

trading.  In only two of those cases were there enhancements for abuse of trust.  In *United States v. Scott London,* 13-CR- 379(GW) (C.D. Cal., 2013), the defendant was a senior partner in the international accounting firm KPMG.  The *London* defendant's USSG range was 46 to 57 months, but he received a sentence of only 14 months.  In *United States v. Frank Hixon, Jr.,* 14-CR-227)(S.D.N.Y., 2014) (RA), Judge Abrams found that the defendant had "abuse[d] his [employer's] trust," but the defendant was the Senior Managing Director at Evercore Group and, in that role, the defendant had learned material non-public information that would affect the stock price, and which he then passed on to others.  The *Hixon* defendant's USSG range was 46 to 57 months, with an upward adjustment for abuse of trust.  He received a 30-month sentence.

In this case, the Government argued in summation that the defendant's conduct had an impact on "ordinary investors".  T. 934.  Even if true --- in fact, the PSR concedes that loss cannot be determined --- Mr. Afriyie had no fiduciary relationship with ordinary market investors, and his sentence cannot be enhanced for abuse of the market's trust under USSG §3B1.3, particularly since the PSR acknowledges that there were no "identifiable victims" of Mr. Afriyie's scheme.  PSR ¶ 41 (original PSR).

In short, whatever duty Mr. Afriyie owed to MSD Capital, it amounted to nothing more than normal employee loyalty, which does not rise to the level of an abuse of a position of trust within the meaning of  USSG § 3B1.3   *See United States v. Huggins,*. 844 F. 3d. 118, 124 (2d. Cir. 2016); *United States v. Wright* 160 F. 3d 905, 910 (2d. Cir. 1998).

In short, the Court should reject the PSR's recommendation that Mr. Afriyie's sentence should be enhanced under the USSG for abuse of a position of trust.  Such an enhancement is unjustified and unwarranted in this case.

### 3. Obstruction of Justice

To justify an enhancement for obstruction pursuant to USSG §3C1.1, as Mr. Afriyie's PSR recommends, this Court would have to find not only that Mr. Afriyie deactivated his "Yahoo" account, but that the deactivation materially impeded the Government's investigation.  In fact, in the defense view, the deactivation of the account was not "material" to the Government investigation. The Government has not presented any evidence that the deactivation of the "Yahoo" account after Mr. Afriyie's arrest hindered the investigation or prosecution of its case.   On the contrary, the Government states at a July 27, 2016 status conference the opposite:

> MR. IMPERATORE: "From what we can tell [referring to the Yahoo account] based on a cursory inspection there appear to be only approximately 100 e-mails in the account at the time it was deactivated and the vast majority of them appear to be junk mail or spam" (Status Conference, July 27, 2016, p. 3)

The Government acknowledges the information form the "Yahoo" account was not material.

In fact, the Government received the substantial benefit from Mr. Afriyie's closing of the "Yahoo" account by being permitted to argue to the jury, that the closing of the account was evidence of consciousness of guilt which the jury could hold against Mr. Afriyie.   To enhance his sentence because of that innocuous act would be another example of inappropriate double counting.

In the amended PSR, the Probation Department came up with another rationale for an obstruction enhancement under USSG §3C1.1, Comment. (N. 4(E)), i.e., Mr. Afriyie "willfully failed to appear for a judicial proceeding."   PSR ¶43.   With this rationale, the Government or the Probation Office has certainly overreached.   Mr. Afriyie, who concededly was not attempting to flee, has already paid a very steep price for his failure to appear on the date and at the time the

trial was scheduled to begin.   He was immediately remanded by the Court, and has remained

detained ever since, when he otherwise would have remained free on his personal recognizance

bond.   The Court acknowledged that Mr. Afriyie's conduct could not be described as "willful".

In fact, this Court offered a sensitive, insightful explanation for Mr. Afriyie's failure to appear.

(T. 124-125)   His failure to appear when required is not what the USSG contemplated as

obstruction of justice.

Accordingly, the Court should not impose a two level enhancement for obstruction

of justice.

### 4.  Restitution.

In the amended PSR, MSD Capital asserts for the first time  a claim for restitution

under the Mandatory Victim Restitution Act of 1996 ("MVRA") on account of legal fees it paid

to its outside law firm, Sullivan & Cromwell.   The MVRA entitles a victim to restitution for

attorney's fees that are "necessary." 18 U.S.C. §3663A (b) (4).   The Second Circuit has held that

certain expenses of the victim are compensable in restitution as "necessary" within the meaning

of the Act when they fall within one of four categories, i.e., damage to or loss of property,

medical or related services, funeral expenses, and loss of income, child care, transportation and

"other expenses incurred during the investigation or prosecution of the offense or attendance at

the proceedings related to the offense." *United States v. Maynard*, 743 F.3d 374 (2d Cir. 2014).

Direct and proximate causation are necessary conditions for restitution, but they are not

sufficient.   In the context of legal fees, there are few "necessary" expenses beyond the cost of an

internal investigation.   Wiggin & Dana, Second Circuit Advisory (Mar. 24, 2014) ("most courts

interpreting the MVRA, including the Second Circuit, have squarely held that corporate victims

have the right to recoup the costs associated with uncovering the offense, including the costs of

internal investigations [and] responding to Government subpoenas"). As far as Sullivan & Cromwell's invoices show (Exhibit 2), there were no internal investigations and no Government subpoenas directed to MSD Capital. *Compare United States v. Cuti*, 778 F.3d 83, 91 (2d Cir. 2014) (attorney's fees recoverable in restitution for internal investigation of CEO fraud on public company).

## B. FORFEITURE.

Mr. Afriyie objects to the proposed preliminary order of forfeiture, and any final order imposing forfeiture in excess of the amount of the least profitable of Mr. Afriyie's trades.

This Court held a forfeiture hearing after Mr. Afriyie was convicted. On January 31, 2017, the jury returned a verdict declaring the proceeds in two accounts forfeited: 1) a Bank of America account containing $15,969.07, and 2) a TD Ameritrade brokerage account containing securities valued at $2,632,893.39. The PSR recommends forfeiture of the entire $2.6 million. PSR ¶104.

The Court should reject the PSR forfeiture conclusion and amount since the Court's instructions to the jury at trial and again before the jury's forfeiture verdict undermine the validity of the jury's forfeiture verdict. Both counts of the indictment were duplicitous in that they each charged 26 separate transactions, and the jury was told that any one of those 26 transactions could support a guilty verdict on either count if the jury found the elements of securities or wire fraud proven beyond a reasonable doubt for at least one of the trades in each count. Without knowing whether the jury convicted on the basis of one, some or all of the 26 transactions underlying Counts One and Two, there is no basis to forfeit all of the proceeds allegedly generated by the charged offenses.

The unit of prosecution for securities fraud is each offending trade. *United States v.*

11

*Dioguardi*, 492 F.2d 70, 83 (2d Cir. 1974); *see also United States v. Schlei*, 122 F.3d 944, 975-980 (11th Cir. 1997) (vacating conviction on securities fraud count which encompassed two separate transactions when venue existed for only one of those transactions). Similarly, each use of the wires in furtherance of a scheme to defraud is considered a separate offense. *United States v. Jones*, 648 F. Supp. 241, 243 (S.D.N.Y. 1986) ("It is well established . . . that each use of the mails or use of the wires constitutes a separate offense, notwithstanding the fact that the defendant may have been engaged in one fraudulent scheme").

Here, Counts One and Two each alleged over two dozen separate transactions. Yet, the jury was instructed that to convict Mr. Afriyie it had to be unanimous only as to one of the charged 26 trades:

> "For you to return a guilty verdict on that count (securities fraud) the Government need not prove and you need not find that the elements of this offense had been met with respect to each of the trades allegedly made or caused by the defendant. Proof beyond a reasonable doubt of all three elements of the offense with respect to *any one trade* is enough. However to return a guilty verdict, you must unanimously agree as to at least one particular trade with respect to which all of the elements of the offense have been met."

> T. 1002-1003 (emphasis added).

As a result, the jury's verdict only supports the conclusion that the jury convicted Mr. Afriyie on one of the charged transactions in each count, but not demonstrably any more. On the contrary, it is likely that the jury convicted on the basis of only one trade under each count, and certainly less than all of the trades, because the Court's instructions relieved the jury of having to spend time deliberating after finding the elements of securities and wire fraud proven as to even one trade. Why would the jury go on to consider and reach a verdict on even one gratuitous trade, let alone all of them? Moreover, it was the defense

12

which unsuccessfully requested the Court to ask the jury to return a special verdict revealing which transactions the jury found beyond a reasonable doubt. (T. 1042)  As a result, Mr. Afriyie is entitled to the benefit of any doubt as to the jury's forfeiture verdict stemming from the ambiguity he sought to avoid.  Now the Court has no way to know or infer anything more from the jury's verdict than that the jury agreed unanimously on one of the 26 transactions charged in each count, but no more than one of those transactions.

In *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001), the defendant was charged in a single count with participation in two narcotics transactions.  On appeal, the defendant contended that the count of conviction was duplicitous, i.e., charging more than one crime in a single count, and that he was prejudiced as a result.  The Second Circuit agreed.  According to *Sturdivant*, because there was no way to discern from the guilty verdict whether the jury had unanimously found that the defendant had engaged in more than one narcotics transaction, and not all of the transactions would trigger the mandatory minimum requirement applicable to conviction on all of the transactions, the  Court vacated the defendant's sentence and directed resentencing without the high mandatory minimum: "[P]rejudice to the defendant can be avoided by sentencing him as if he had been convicted of the charged crime involving the lesser drug amount, and, consequently, the lesser penalty."  *Id.* at 80.

*Sturdivant's* reasoning and rule apply equally to the jury's forfeiture verdict in this case. Because some of Mr. Afriyie's trades generated less than $10,000 in profits, without any basis to believe or infer that the jury was unanimous as to all or more transactions, there is no basis to forfeit more than Mr. Afriyie's profit from other than the smallest or least consequential of the transactions.

The PSR erroneously contends that, because the jury unanimously agreed to a forfeiture verdict of some $2.6 million, the jury must have been unanimous as to all of the underlying transactions.  The PSR is mistaken.  Its erroneous conclusion ignores the Court's instructions to the jury, particularly its instruction regarding the jury's task in determining whether and how much forfeiture there should be:

> "In determining whether the property I just described is property
> subject to forfeiture, you are instructed that your previous
> determination that the defendant is guilty of the offenses with
> which he is charged in Counts One and Two is final, conclusive
> and binding. . . . I [therefore] direct you not to discuss in the
> second round of deliberations whether the defendant is guilty or
> not of securities fraud and wire fraud."

T. 1149.

Read together, first, the Court's instructions to the jury before the verdict on guilt and secondly, before the forfeiture verdict, effectively told the jury that, to convict the defendant of securities and wire fraud under each of the two counts, the jury only had to find beyond a reasonable doubt the elements of those two offenses as to only one of the multiple transactions under each count.  Having found beyond a reasonable doubt at least one such transaction proven under each count, the jury could then render a forfeiture verdict as to all of the transactions under each count, whether or not they had convicted the defendant on the basis of all of those transactions or only one of them.

As a result, the jury was permitted to reach a forfeiture amount of $2.6 million so long as they could trace or connect the proceeds to the charged conduct.  The jury was entitled to make this finding whether or not they had considered Mr. Afriyie's guilt in respect to each transaction.  It is likely that the jury did no more than was necessary, i.e., convicted on the basis of only one transaction under each count.  Having found one of the trades under each count to be

14

culpable, the jury likely stopped there because, under the Court's instructions, deliberating and convicting on more than one transaction would have been a waste of time for the jury.

Ordering forfeiture on the basis of un-convicted conduct --- indeed, possibly even acquitted conduct --- is not permitted by the law.   The jury can only find forfeiture, and the Court can only enter a forfeiture judgment, on the basis of culpable conduct which the jury has found proven beyond a reasonable doubt.  Rule 32.2(b) (5), F.R.Cr.P.

Because there is no way to know whether the jury unanimously agreed on more than one of Mr. Afriyie's transactions, the only way to avoid unlawful prejudice to Mr. Afriyie is to order that he forfeit no more than the amount generated by the smallest securities transaction supported by the jury's verdict.

## C. RESTITUTION

No point would be served by repeating here the arguments against MSD's tardy restitution claim addressed in the section of this sentencing memorandum in support of Mr. Afriyie's objections to the PSR.  *See* Section A-4, *supra*.  Instead, Mr. Afriyie incorporates by reference the arguments he advanced against restitution in his objections to the PSR.

Suffice it to say here that, with no determinable victim or loss, only gain to the defendant, the only identifiable restitution claim advanced by the Government and the Probation Department is the approximately $690,000 in attorney's fees for which MSD's highly regarded commercial firm, Sullivan & Cromwell, billed MSD.  While the "work" for which Sullivan & Cromwell billed MSD may have made MSD's life easier --- e.g., pulling documents or attending court proceedings and reporting back --- nothing for which Sullivan & Cromwell billed MSD is compensable in restitution.

## D. DEFENDANT'S FAMILY BACKGROUND.

Mr. Afriyie shares a deep bond with his two sisters, Ashley and Courtney and his mother, Lawrencia. (Exhibit 3 is a group photograph of Ashley, Lawrencia and Courtney and three individual photographs of each of them. Accordingly, John's prosecution is difficult for the entire family, but especially his mother, Lawrencia, familiarly known as "Larry," because she encouraged and fostered Mr. Afriyie's interest in finance and investing, as well as service to the community. She has now seen her hopes and dreams for her beloved son dashed by his prosecution and conviction. (Exhibit 4, letter from mother, Lawrencia Afriyie) Letters are also provided by Ashley (Exhibit 5) and Courtney (Exhibit 6)

**E. §3553(a) FACTORS.**

In exercising discretion, judges are guided by 18 U.S.C. § 3553(a), which directs courts to impose a sentence that is "sufficient but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense," as well as to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a) (2). The statute also directs courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a) (1), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct.  18 U.S.C. § 3553(a) (6)

We respectfully submit that a sentence within the Guideline range in this case is far greater than necessary to satisfy the objectives set forth in 3553(a).  We further submit that an individualized assessment of Mr. Afriyie's personal history and characteristics and the nature of his conduct warrant a Non-USSG sentence for the following reasons.

- Before this case, Mr. Afriyie had an enviable record.  There is no reason to fear or believe that he will ever again be in trouble with the criminal law.  Indeed, because of his conviction, Mr. Afriyie will never have an opportunity to offend in the financial services industry.

- Mr. Afriyie has already paid a heavy price for his conduct.  What had been a career with a clear trajectory to success, including financial security, has now crashed and burned.  Somehow he will have to pick up the pieces and start afresh.  He should be permitted to start on his new life as soon as possible.

- Mr. Afriyie's prosecution and conviction will have a devastating impact on his and his close-knit family's lives.  Perhaps that is to be expected.  What makes Mr. Afriyie unusual, however, is his upbringing, having been raised by a single immigrant mother who pulled herself up by her bootstraps to middle class respectability and security.  Sadly, Mr. Afriyie's African-American mother, like so many others, will now have to visit her son in prison.

- The reasoning of Judge Newman in the *Algahaim* case cited above provides a rational explanation for a below-USSG sentence in a case like this one where the "loss" or "gain" factor dramatically overstates the seriousness of the offense conduct.

- All the insider trading defendants to whom the Morrison & Foerster report refers (Exhibit I) received sentences substantially below the USSG guideline range, with lesser sentences ranging from several months less than the USSG guidelines to many years less.  Some of those defendants even avoided a prison term entirely, while Mr. Afriyie has already been detained at the MDC for more than six months.  To avoid an unjustified sentencing disparity, the Court should certainly consider sentencing Mr. Afriyie below the USSG guideline range.

The relevant §3553(a) factors are discussed below *seriatim.*

- **The nature and circumstances of the offense --- 18 USC § 3553(a) (1).**

Having presided over Mr. Afriyie's trial, this Court is aware of the fundamental nature and circumstances of the offense.  It need not be repeated here.  However, we respectfully submit

that the Court consider that Mr. Afriyie's conduct was aberrational ad non-recurring in nature in what otherwise was a productive career and life.   Whatever Mr. Afriyie's perception of the information was, his youth and inexperience should be considered.   As this Court is aware, Mr. Afriyie has suffered collateral disabilities as a result of his prosecution and reputation in the financial services industry that he worked so hard to obtain, and now he must carry with him a felony conviction as he starts anew.

- **The history and characteristics of the defendant --- 18 USC § 3553 (a) (1).**

- **The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and (B) to afford adequate deterrence to criminal conduct. --- 18 USC § 3553)(2)(A) and (B).**

There is essentially no need for specific deterrence or protection of the public through incarceration in this case.   Mr. Afriyie has no prior criminal record and there is no rational reason to believe that he will have any future contacts with law enforcement.   Mr. Afriyie's reputation has been irreparably damaged by this investigation and prosecution.   It is highly unlikely that Mr. Afriyie will ever be hired in any investment position in the future. *See United*

*States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (JSR) ("With his reputation ruined by his conviction, it was extremely unlikely that he would ever involve himself in future misconduct").

On the issue of general deterrence, the fact of Mr. Afriyie's felony conviction has already "sent a message" to the investment community of the seriousness of trading on insider information. That message has clearly not been lost on the investment community. People are well aware that an accusation of improper trading has a serious impact on the reputation of investment personnel. It is not the incarceration that motivates people to "play by the rules," but the serious implications of being charged. That message is clear to Mr. Afriyie, who worked industriously to obtain positions in the finance world and now has lost everything from a professional sense. He will not get those opportunities back and will have to refocus his career goals. That fact has also been driven home to young people, like Mr. Afriyie, who are entering the world of finance.

Sending Mr. Afriyie off to jail for a lengthy time contradicts the "parsimony principle" which states that a "court shall impose a sentence *sufficient, but not greater than necessary,* to comply with the purposes set forth" in § 3553 (emphasis supplied). As Judge Rakoff discussed in *Adelson,* referring to retribution and general deterrence, while a prison term may be necessary, "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." *Adelson* at 514, *citing, e.g. Punishment Purposes,* 58 Stanford L. Rev. 67 at 80 (2005); *Imprisoning White Collar Criminals?* 23 S. Ill. U. L. J.485 at 492 (1995). In terms of general deterrence, it is the likelihood of some punishment, not its length that will provide the appropriate message. A lengthy sentence would impose punishment that is "greater than necessary" without serving a statutory factor under §

24

3553.

Judge Rakoff has thoughtful insights when discussing the sentencing imposed on Rajat Gupta, a Goldman Sachs executive who tipped Raj Rajaratnam, who in turn made multiple millions of dollars in illicit profits. In imposing a 24-month sentence for Gupta, rather than a Guideline sentence of 78 to 97 months, Judge Rakoff said "no one really knows how much jail time is necessary to materially deter insider trading; but common sense suggest that most business executives fear even a modest prison term to a degree that more hardened types might not. Thus, a relatively modest prison term should be 'sufficient, but not greater than necessary,' for this purpose." *United States v. Gupta,* 904 F.Supp.2d 349, 355 (S.D.N.Y. 2012) (JSR).

- **The need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner --- 18 USC § 3553(2)(D).**

It should be noted that since Mr. Afriyie's incarceration at the MDC, he has worked in the kitchen and has received outstanding work performance ratings at the Bureau of Prisons (Exhibit 18)  John has also been a regular tutor in programs administered by the jail. He has taught fellow inmates in both GED programs when they were available as well as helping improve academic skill levels for the inmates. After his incarceration, Mr. Afriyie hopes to mentor disadvantaged youth in becoming financially wiser. PSR ¶ 84

- **The need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar conduct 18 USC 3553(a)(6).**

Mr. Afriyie, in contrast to many, if not most, of the individuals criminally charged in insider trading cases, worked at an entry level junior analyst position at a family investment fund. He had no advanced degree or ever was licensed by the SEC or FINRA. Whatever his perception of the information he received and the proper use of it, his age and his lack of experience should be key factors in determining an appropriate sentence. Mr. Afriyie made no genuine effort to hide

25

his investments. His conduct was unsophisticated. His life, up to that point, indicated a hard-working, conscientious young man who hoped to have a successful career in finance. That has been simply destroyed by this arrest and now, in his mind, an incomprehensible conviction.

Because of his failure to appear in Court, Mr. Afriyie is being treated differently from most other insider trading defendants. He has been jailed at the MDC since January 23, 2017, now for more than six months, a far more secure facility than other similarly charged defendants. Most convicted insider traders are sentenced to Low Security or Camp facilities within the Bureau of Prisons. They are often allowed to surrender to Camp facilities, often even after their appeals. It makes sense for these people to receive this treatment because they present no danger or risk to the community. Ideally, individuals should be incarcerated only after they have been sentenced and their appeals have been completed. Mr. Afriyie has paid a heavy price for his conduct. He has already received a "sentence disparity" by his present confinement.

Counsel does not challenge the Court's remanding of Mr. Afriyie, but is simply stating the obvious, i.e., Mr. Afriyie's prison treatment has already been harsher than the punishment typically meted out to inmates convicted of similar charges. Still, not surprisingly, there have been no instances of misconduct on the part of Mr. Afriyie. PSR ¶ 7. Mr. Afriyie made the best of his situation both teaching inmates and working in the kitchen. He is trying to be a good citizen in the prison.

Due to the Bureau of Prisons classification system, Mr. Afriyie, as a non-violent offender with no criminal record and with very little chance of reoffending, will most likely be going to a Satellite Camp facility as the ultimate place of incarceration. Most of the inmates convicted of these insider trading cases wind up at the Fort Devens Satellite Camp in Massachusetts or the Fort Dix Satellite Camp in New Jersey or a similar-type facility.

This Court has the complicated responsibility of determining the length of sentence for this young man. This memorandum attempts to provide this Court with some insights into the character of John Afriyie. How should Mr. Afriyie be defined? What is just? Mr. Afriyie did not come from the typical finance background. He was raised by a hard-working single mother who did everything in her power to give her children the education and opportunity to succeed in America. When Mr. Afriyie graduated from Cornell University, he strove to work in an environment that had very few minorities. As Mr. Wong indicated in his letter, Mr. Afriyie "was working with some very intelligent investment professionals from Harvard, Columbia and Wharton." Mr. Wong says that during that summer, Mr. Afriyie "was always early to work and attempted to learn as much as he could." In other words, he had a strong work ethic and was highly motivated to be successful.

Mr. Afriyie struggled to write a letter to the Court. Obviously, it was not easy for him to express his heartfelt feelings to the Court. His effort is attached as Exhibit 20.

Counsel will end by referencing Judge Rakoff's observation at the sentencing in *Gupta*, 904 F.Supp.2d at 350:

> "Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity a large complex of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results."

## F. CONCLUSION

For all the foregoing reasons, the defendant requests that the court impose a non-USSG sentence of no more than one year and a day.  Such a sentence would best satisfy all the 3553(a) factors and "impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of the statute.

Dated: New York, New York
      July 12, 2017

                                Respectfully submitted


                                Mitchell Dinnerstein
                                *Attorney for John Afriyie*

## F. CONCLUSION

For all the foregoing reasons, the defendant requests that the court impose a non-USSG sentence of no more than one year and a day.  Such a sentence would best satisfy all the 3553(a) factors and "impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of the statute.

Dated: New York, New York
       July 12, 2017

Respectfully submitted

/s/

Mitchell Dinnerstein
*Attorney for John Afriyie*