# EXHIBIT 1

# INSIDE

1    OVERVIEW OF INSIDER TRADING LAW

2    2014 ENFORCEMENT OVERVIEW

2    SECOND CIRCUIT ISSUES LANDMARK *NEWMAN* DECISION
2        Newman and Chiasson Convictions Overturned
5        *Newman* Threatens to Topple Operation Perfect Hedge
5        *Newman* Reaches Beyond Operation Perfect Hedge
6        Possible Enforcement Responses to *Newman*: Whatever Happened
         to Mail and Wire Fraud?
7        The SEC Retreats:  Herbalife Dismissal

8    HIGH PROFILE WINS AND LOSSES FOR DOJ IN THE S.D.N.Y.
8        DOJ Secures Conviction of Mathew Martoma
9        Rengan Rajaratnam Defeats DOJ at Trial

10   THE SEC STRUGGLES AT TRIAL
10       The SEC's Trial Record
11       The SEC's Shift to Administrative Proceedings
12       Administrative Proceedings By The Numbers

13   COOPERATION STILL PAYS, JUST NOT AS MUCH AS IT USED TO

15   INSIDER TRADING 2.0

15   CONCLUSION

16   Appendices - 2014:  Penalties Imposed in Insider Trading Prosecutions
     and SEC Enforcement Actions

17   Appendix A - Criminal Prosecutions

24   Appendix B - SEC Enforcement Actions

**MORRISON**
**FOERSTER**

# INSIDER TRADING

## ANNUAL REVIEW

# OVERVIEW OF INSIDER TRADING LAW

"Insider trading" is an ambiguous and overinclusive term. Trading by insiders includes both legal and illegal conduct. The legal version occurs when certain corporate insiders – including officers, directors and employees – buy and sell the stock of their own company and disclose such transactions to the SEC. Legal trading also includes, for example, someone trading on information he or she overheard from a conversation between strangers sitting on a train or obtained through a non-confidential business relationship. The illegal version – although not defined in the federal securities laws – occurs when a person buys or sells a security while knowingly in possession of material nonpublic information that was obtained in breach of a fiduciary duty or relationship of trust.

Despite renewed attention in recent years, insider trading is an old crime. Two primary theories of insider trading have emerged over time. First, under the "classical" theory, the Securities Exchange Act of 1934's ("Exchange Act") anti-fraud provisions – Section 10(b) and Rule 10b-5 – apply to prevent corporate "insiders" from trading on nonpublic information obtained from the company in violation of the insiders' fiduciary duty to the company and its shareholders. Second, the "misappropriation" theory applies to prevent trading by a person who misappropriates information from a party to whom he or she owes a fiduciary duty – such as the duty owed by a lawyer to a client.[2]

Under either theory, the law imposes liability for insider trading on any person who obtains material nonpublic information and then trades while in possession of such information in violation of a fiduciary duty. Also, under either theory, until 2012, the law held liable any "tippee" – that is, someone with whom that person, the "tipper," shares the information – as long as the tippee also knew that the information was obtained in breach of a duty.

In 2012, a decision by the Court of Appeals for the Second Circuit in *SEC v. Obus* arguably

expanded tippee/tipper liability – at least in SEC civil enforcement actions – to encompass cases where neither the tipper nor the tippee has actual knowledge that the inside information was disclosed in breach of a duty of confidentiality.[3] Rather, a tipper's liability could flow from recklessly disregarding the nature of the confidential or nonpublic information, and a tippee's liability could arise in cases where the sophisticated investor tippee should have known that the information was likely disclosed in violation of a duty of confidentiality.[4]

The holding in *Obus* was narrowed in 2014 by the Second Circuit's opinion in *United States v. Newman*.[5] In *Newman*, the Second Circuit held that downstream tippees in criminal cases can be convicted of insider trading only if (1) the tippee knew of a personal benefit received by the insider in exchange for his or her breach of fiduciary duty and (2) the personal benefit was more than mere friendship, and was instead "objective" and "consequential."[6] It remains to be seen whether the *Newman* decision will be followed in other circuits and whether it will stand after DOJ continues to attack it in the Second Circuit and perhaps the Supreme Court of the United States.

While the interpretation of the scope and applicability of Section 10(b) and Rule 10b-5 to insider trading is evolving, the anti-fraud provisions provide powerful and flexible tools to address efforts to capitalize on material nonpublic information.

Section 14(e) of the Exchange Act and Rule 14e-3 also prohibit insider trading in the limited context of tender offers. Rule 14e-3 defines "fraudulent, deceptive, or manipulative" trading as the purchase or sale of a security by *any* person with material information about a tender offer that he or she knows or has reason to know is nonpublic and has been acquired directly or indirectly from the tender offeror, the target, or any person acting on their behalf, unless the information and its source are publicly disclosed before the trade.[7] Under Rule 14e-3, liability attaches regardless of a pre-existing relationship of trust

tippees. At trial, Newman and Chiasson sought a jury charge that required a finding of knowledge by the defendant of a personal benefit to the original insider tipper. U.S. District Court Judge Richard Sullivan rejected that request, citing the 2012 Second Circuit opinion in *SEC v. Obus*.

On December 10, 2014, after an oral argument that had foreshadowed good news for the appellants, the Second Circuit issued a landmark decision reversing the Newman and Chiasson convictions and significantly narrowing the scope of insider trading liability. In a strongly worded unanimous opinion authored by Judge Barrington D. Parker, Jr., and joined by Judges Ralph Winter and Peter Hall, the court held that the Newman and Chiasson "jury instruction was erroneous because ... in order to sustain a conviction for insider trading, the Government must prove beyond a reasonable doubt that the tippee knew that an insider disclosed confidential information *and* that he did so in exchange for a personal benefit."[11] In reaching this conclusion, the Second Circuit relied on the Supreme Court's decision in *SEC v. Dirks* for the proposition that "the tippee's liability derives *only* from the tipper's breach of a fiduciary duty, *not* from trading on material, non-public information ... [and] the corporate insider has committed no breach of fiduciary duty unless he receives a personal benefit in exchange for the disclosure."[12] The court explained that, because "the exchange of confidential information for personal benefit ... *is* the fiduciary breach that triggers liability for securities fraud ... the Government cannot meet its burden of showing that the tippee knew of a breach" unless it can establish "that the tippee knows of the personal benefit received by the insider."[13]

In reaching this conclusion, the Second Circuit highlighted that it "join[ed] every other district court to [its] knowledge – apart from Judge Sullivan – that has confronted this question."[14] The Second Circuit panel went to the unusual length of identifying by name the five S.D.N.Y. judges who had given the correct charge on the necessary element of the tippee's knowledge of

personal benefit to the insider.[15] The panel went a step further, making a pointed criticism of the decision of the U.S. Attorney's Office to file a superseding indictment against Michael Steinberg, *after* the jury verdict in the Newman/Chiasson trial, in order to get the "personal benefit" charge from Judge Sullivan against Steinberg that the other five Southern District judges had been unwilling to give.[16]

The *Newman* court offered little guidance as to how its decision could be reconciled with the Second Circuit's earlier decision in *Obus*, where the panel had held that tippee/tipper liability – at least in SEC civil enforcement actions – could encompass cases where neither the tipper nor the tippee had actual knowledge that the inside information was disclosed in breach of a duty of confidentiality. While *Obus* did not directly address whether the SEC is required to present evidence of a personal benefit to the tipper, *Newman* now likely requires in SEC enforcement actions a showing that the defendant was at least reckless in not knowing of such a personal benefit. While recklessness is not sufficient under *Newman* to prove the necessary element of willfulness in a criminal Section 10(b) case, prosecutors may, in the appropriate case, try to rely on conscious avoidance or willful blindness to show that a tippee deliberately tried to avoid learning the relevant facts about the personal benefit to the tipper.

In addition to requiring that the jury find that the insider received a personal benefit in exchange for the disclosure of confidential information, the *Newman* decision is also noteworthy in its departure from *Obus* in narrowing what may constitute a "personal benefit." In *Obus*, the Second Circuit held that the "[p]ersonal benefit to the tipper is broadly defined: it includes not only 'pecuniary gain,' such as a cut of the take or a gratuity from the tippee, but also a 'reputational benefit' or the benefit one would obtain from simply 'mak[ing] a gift of confidential information to a trading relative or friend.'"[17] But in *Newman*, the Second Circuit panel explained that this permissive standard "does not suggest that the Government may prove the receipt of a

personal benefit by the mere fact of a friendship, particularly of a casual or social nature. If that were true, and the Government was allowed to meet its burden by proving that two individuals were alumni of the same school or attended the same church, the personal benefit requirement would be a nullity."[18] Instead, the court explained, there must be "proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."[19]

The *Newman* court went on to note that the only evidence presented of a personal benefit to Rob Ray and Chris Choi – the Dell and Nvidia insiders, respectively – was that each received benefits in the form of friendship and career advice. The career advice Ray received was, in the court's view, "little more than the encouragement one would generally expect of a fellow alumnus or casual acquaintance," while Choi and his tippee were "merely casual acquaintances."[20] On this basis, the *Newman* court ruled that the "evidence of any personal benefit received by the alleged insiders was insufficient to establish the tipper liability from which defendants' purported tippee liability would derive" and was therefore "insufficient to sustain a guilty verdict against Newman and Chiasson."[21] The court directed that the Newman and Chiasson convictions be vacated and the indictments dismissed.

In the SEC's parallel civil case against Newman and Chiasson, Judge Shira Scheindlin applied *Newman* to vacate the court's prior order granting partial summary judgment to the SEC. The matter is currently stayed pending final resolution of the *Newman* criminal appeal.[22]

2015 has already seen the U.S. Attorney's Office level an all-out attack on the *Newman* panel opinion. On January 23, 2015, the U.S. Attorney's Office filed a scathing petition for rehearing and/or rehearing en banc. In its petition, the government argued that rehearing is appropriate because the "Panel's holding on the definition of 'personal benefit' in insider trading cases ... cannot be squared with

governing Supreme Court precedent, conflicts with prior holdings of other circuits and this Court, and defies practical application."[23] Specifically, the government argued that, under *Dirks*, the personal benefit may be "a gift of confidential information to a trading relative or friend."[24] The petition went on to argue that the panel's "failure to consider the Government's proof in the light most favorable to the Government (or to consider some aspects of the Government's proof at all), led it to reach the erroneous conclusion that the Government's evidence was insufficient"[25] under this standard. The government's evidence of the gift to a friend, and other benefits, it argued, was sufficient to establish that the Dell and Nvidia insiders revealed confidential information in exchange for a personal benefit. Finally, the government argued that Newman and Chiasson were aware of – or consciously avoided knowing about – the personal benefit to the Dell and Nvidia insiders, as reflected by the government's proof that Newman received "highly accurate earnings figures, quarter after quarter" and that he "[paid] for this information through back channels."[26] According to the government, Chiasson likewise was told that the information came from "someone within Dell" and hid this information by creating "bogus trading reports."[27]

On January 29, 2015, the SEC filed an amicus brief in support of the government's petition, arguing that the *Newman* panel opinion "is directly at odds with Supreme Court and prior Second Circuit decisions holding that an insider derives a personal benefit – and thus engages in prohibited insider trading – by disclosing inside information to a friend who then trades, because that is equivalent to the insider himself profitably trading on the information and then giving the trading profits to the friend, which is obviously illegal."[28] The Second Circuit directed Newman and Chiasson to file any response by February 21, 2015 and invited any other interested entities to request an opportunity to submit an additional amicus brief.[29] In early 2015, all eyes will be watching to see if the panel will amend its opinion in any

way or if the full Second Circuit will grant a rare en banc rehearing in the *Newman* case.

### Newman Threatens to Topple Operation Perfect Hedge

The *Newman* opinion – should it remain good law – is notable not only for its resounding reversal of the convictions of Newman and Chiasson, but also for the likelihood that it will have far-reaching implications for the string of convictions and guilty pleas secured by the U.S. Attorney's Office for the S.D.N.Y. over the last several years. While only Newman and Chiasson participated in the appeal, the Second Circuit amended the case caption in the appeal to include Michael Steinberg, a former SAC Capital portfolio manager who, as we reported in last year's Review, was convicted of four counts of insider trading in December 2013. While Steinberg was sentenced to 42 months imprisonment in June 2014, his conviction now appears to be in serious jeopardy. Steinberg was convicted of insider trading in Dell and Nvidia stock – the same stocks at issue in *Newman* – and received the same confidential information on these stocks that had originated with insiders Ray and Choi. Following the *Newman* decision, Steinberg sought to have his appeal stayed pending resolution of the government's petition for rehearing in *Newman*. The Second Circuit granted Steinberg's request, postponing resolution of Steinberg's appeal until after the *Newman* appeal is finally resolved.[30] Applying *Newman* as it currently stands, however, Steinberg's conviction is likely to be reversed, toppling yet another one of DOJ's trial victories.

In addition to Steinberg, the *Newman* court amended the caption of its opinion to include Jon Horvath, Danny Kuo, and Hyung Lim, all of whom had pleaded guilty to insider trading and cooperated with the government. *Newman* likely throws into jeopardy all of these guilty pleas, because none of the relevant plea allocutions included an admission by the defendant that he was aware of a personal benefit to the insider and because all were based on trades in Dell and Nvidia for which the Second Circuit has already ruled there was

an insufficient personal benefit to the insider.[31] In the wake of the *Newman* opinion, DOJ sent a letter to Judge Sullivan – who had already postponed Kuo's sentencing in light of the pending *Newman* appeal – and asked for a further 45-day adjournment of Kuo's sentencing for the parties to "consider the effect of the *Newman* decision on Kuo's case, and the Government [to] evaluate its appellate options with respect to the *Newman* decision."[32]

Attention in 2015 will focus on DOJ's likely petition for Supreme Court review of the *Newman* decision if its petition for rehearing or rehearing en banc in the Second Circuit does not succeed. It will also see courts outside the Second Circuit having to decide whether to adopt the Second Circuit's *Newman* precedent in insider trading cases involving tippees. District court judges within the Second Circuit will have to decide whether prior guilty pleas may be withdrawn or SEC enforcement settlements may be undone for noncompliance with *Newman*.

### Newman Reaches Beyond Operation Perfect Hedge

Some of this increased judicial scrutiny has already begun. Just days after the *Newman* decision, Judge Andrew Carter in the S.D.N.Y. ordered a status conference in an insider trading case, questioning the adequacy of guilty pleas entered in his courtroom in the latter half of 2014. In 2012, DOJ charged a group of stockbrokers and friends with illegal insider trading related to IBM's acquisition of SPSS Inc., which was announced in 2009.[33] Specifically, the government alleged that Trent Martin, a stockbroker, learned confidential information about IBM's impending acquisition of SPSS through his friend, who was a lawyer at the law firm representing IBM. The government also charged Thomas Conradt, Martin's roommate and a stockbroker who bought shares in SPSS, in addition to David Weishaus, Benjamin Durant, and Daryl Payton, all of whom worked with Conradt at Connecticut-based Euro Pacific Capital Inc. The government alleged that each tippee bought shares in SPSS before the

announcement of the IBM acquisition. By November 2014, all defendants except Durant had pleaded guilty to conspiracy to commit securities fraud.

Recognizing that some of these guilty pleas might be insufficient in light of *Newman*, Judge Carter called a status conference on December 18, 2014. At the conference, Judge Carter indicated that, with respect to Martin's guilty plea, "Based on the Circuit's opinion in *Newman*, I don't believe that there is a factual basis for the plea, and I will vacate the plea."[34]

The government requested the opportunity to submit briefing on this issue. In DOJ's brief, filed on January 12, 2015, the government challenged both *Newman*'s holding and its applicability to the IBM-related guilty pleas. The government argued that "[t]he *Newman* decision dramatically (and, in our view, wrongly) depart[ed] from thirty years of controlling Supreme Court authority and, in so doing, legalize[d] manipulative and deceptive conduct that no court has ever sanctioned."[35] The government went on to contend that because *Newman* was "an insider trading case brought under the classical theory of liability" it "should not apply to this case, brought under the misappropriation theory of liability."[36] The government relied on the Supreme Court decision in *O'Hagan*[37] for the proposition that the "breach in a misappropriation case occurs upon the theft of confidential information, whereas the breach in a classical case occurs where there is a disclosure for a personal (rather than corporate) purpose," and therefore while the personal benefit to the insider is a key element in a classical case, there is no such requirement in a misappropriation case.[38] Indeed, as noted in the government's brief, courts in the S.D.N.Y. have held that "[t]he misappropriation theory of liability does not require a showing of a benefit to the tipper."[39]

In a three-page order issued on January 22, 2015, Judge Carter rejected DOJ's arguments, relying on the court's note in *Newman* that "the elements of tipping liability are the same, regardless of whether the tipper's duty arises under the 'classical' or the 'misappropriation'

theory."[40] While Judge Carter acknowledged that this language might be dicta, he ruled that it was "not just any dicta, but emphatic dicta which must be given the utmost consideration."[41] Following this ruling, the government submitted a letter to the court on January 28, 2015 urging Judge Carter to dismiss the indictments against the five named defendants while the government pursues its appeal of the *Newman* decision.[42] Judge Carter agreed to grant the government's request at a January 29, 2015 status conference.[43]

*Newman* also threatens to upset the conviction of David Riley, the former Foundry Networks executive who was convicted at trial of insider trading in October 2014. Riley, one of the only corporate insiders criminally charged by DOJ, allegedly passed information about Brocade's upcoming acquisition of Foundry to Matthew Teeple, an analyst at Artis Capital.[44] While Teeple had pleaded guilty to insider trading in advance of trial, Riley fought the case, and was convicted on three of four counts after a three-week trial.[45] Following the Second Circuit's opinion in *Newman*, Riley filed a motion for a new trial, arguing that the government had failed to advance sufficient evidence that he had received a personal benefit for passing information to Teeple.[46] While this motion is being resolved, Riley's sentencing has been adjourned until March 16, 2015. Focus in 2015 will likely be on how the *Riley* court – and other courts addressing these issues – struggle to apply *Newman* to additional challenges to insider trading convictions.

### *Possible Enforcement Responses to Newman: Whatever Happened to Mail and Wire Fraud?*

The Second Circuit's *Newman* decision may lead federal prosecutors to resume reliance on the mail fraud and wire fraud statutes in insider trading cases. In the highly publicized insider trading prosecutions of the late 1980s, the U.S. Attorney's Office for the S.D.N.Y. typically charged defendants under the mail and wire fraud statutes as well as under Section 10(b), in part because of uncertainties pre-*O'Hagan* about the viability of the securities

fraud misappropriation theory. Before *O'Hagan*, many understood the reach of the mail and wire fraud statutes to be broader than Section 10(b), provided that the statutes' jurisdictional predicates had been met. So, for example, in *Carpenter v. United States* – a pre-*O'Hagan* misappropriation theory prosecution of a *Wall Street Journal* columnist tipper and two tippees who traded on advance knowledge of the content of his column – the Supreme Court split 4-4 on the Section 10(b) conviction, but affirmed the mail and wire fraud convictions by an 8-0 vote.[47]

Prosecutors have in recent years charged fewer insider trading schemes as mail and wire frauds. In the recent highly-touted insider trading prosecutions in the S.D.N.Y., the government primarily charged the insider trading (aside from conspiracy counts) under Section 10(b) and Rule 10b-5, often without adding parallel mail or wire fraud counts.

Based on our review, only approximately 25% of insider trading prosecutions in the last five years have included mail and wire fraud counts. Prosecutors frequently omit mail and wire fraud counts even while alleging the jurisdictional predicate of use of the U.S. Mail or interstate wires in the charging instrument. It is not clear why this trend has developed, but it may arise from a perception that, with the misappropriation theory now well-established under Section 10(b), additional mail and wire fraud charges are simply duplicative and do not benefit the government's case. If so, that perception may change post-*Newman* because it is far from clear that a mail or wire fraud conviction requires proof of the same personal benefit required for a Section 10(b) conviction under *Newman*. We are not aware of any decision that has squarely addressed the question.[48]

As a result, prosecutors may return to charging insider trading cases as mail frauds or wire frauds, arguing that *Newman*'s holding is limited to Section 10(b) cases. (For online traders, the government may not have the jurisdictional predicates that were always present in the "olden days": the mailing of

trade confirmations and monthly statements and records of any interstate phone calls.) Even if *Newman* is read more broadly to apply to any fraudulent scheme, the mail and wire fraud statutes' language extends to schemes "by means of *false or fraudulent* pretenses."[49] Prosecutors may argue that, even if misappropriation of confidential information in violation of a duty is not *fraudulent* absent a personal benefit to the party misappropriating the information, misappropriation in violation of a duty of confidentiality necessarily involves false pretense in violation of the statutes.[50]

If prosecutors do return to a widespread practice of charging insider trading cases under mail and wire fraud statutes, defendants will likely argue that: (1) notwithstanding the reference in the statutory language to "false or fraudulent" conduct, courts have read the mail and wire fraud statutes to require a fraudulent scheme[51] and (2) *Newman* should be read to hold broadly that a fraudulent insider trading scheme requires a personal benefit to the tipper, regardless of whether the fraud is prosecuted as securities fraud, mail fraud, or wire fraud. Moreover, imposing mail and wire fraud liability based on securities transactions that do not violate Section 10(b) would undermine the Second Circuit's policy rationales in *Newman*. Among other things, the Second Circuit in *Newman* explained that the personal benefit requirement is "a critical limitation on insider trading liability that protects a corporation's interests in confidentiality while promoting efficiency in the nation's securities markets."[52] And the court explained that the further requirement that the tippee *know* of the personal benefit to the tipper is "particularly appropriate in insider trading cases where we have acknowledged 'it is easy to imagine a . . . trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful.'"[53]

### The SEC Retreats: Herbalife Dismissal

Within days of the Second Circuit's *Newman* decision, the SEC moved to dismiss an administrative complaint against an alleged downstream tippee. The Commission had

Martoma. In 2012, DOJ charged Martoma with insider trading, alleging that CR Intrinsic Investors, an affiliate of SAC Capital Advisors, sold more than $960 million in shares of Elan Corporation and Wyeth Pharmaceuticals after Martoma had received material nonpublic information regarding a failed clinical trial for a new Alzheimer's drug being jointly tested by the two pharmaceutical companies.[61] According to the government, this trade enabled CR Intrinsic to avoid more than $276 million in losses when the failed trial was ultimately revealed to the investing public. At trial, the government's key cooperating witness, Dr. Sidney Gilman, testified that he had provided Martoma with inside information regarding the ongoing clinical trials for the Alzheimer's drug. Dr. Gilman, who was working for expert-networking firm Gerson Lehrman, had previously entered into a non-prosecution agreement with the government in exchange for his testimony.

Martoma's trial was marred by negative press regarding his past, including his expulsion from Harvard Law School for falsifying his transcripts.[62] Although Martoma was able to ensure that ugly facts about his expulsion were not presented at trial, this small victory did not save him. After a four-week trial, Martoma was convicted on all counts in just under 15 hours of deliberations.[63]

At sentencing, Judge Gardephe determined that the Guidelines Range applicable to Martoma's crimes was 188 to 235 months (that is, 15 to nearly 20 years) imprisonment. In so finding, Judge Gardephe rejected several arguments put forth by Martoma in an effort to reduce the gain (and avoided loss) attributed to his trading, including an argument that trades in the SAC Capital "house" account should be excluded.[64] However, at sentencing, Judge Gardephe departed well below the Guidelines Range, sentencing Martoma to 9 years in prison.

Martoma began serving his sentence on November 21, 2014.[65] But Martoma, too, may also seek reversal of his conviction based on *Newman*. Unlike in the Newman and Chiasson

trial, the jury hearing Martoma's case was instructed that it had to find that Martoma knew of a personal benefit to the insider – in his case, Dr. Gilman – in order to convict Martoma. However, Martoma will likely argue on appeal – as he did in his motion for bail pending appeal – that Dr. Gilman did not in fact divulge material nonpublic information in exchange for personal gain.[66] Specifically, Martoma will likely argue that Dr. Gilman did not receive consulting fees for every call with Martoma and would have received any such fees regardless of the disclosure of material nonpublic information, because he was being paid for his time, not for providing material nonpublic information. Martoma's opening brief on appeal is due to be filed in February 2015, and the appeal will be one of the key developments in insider trading to watch in 2015.

### Rengan Rajaratnam Defeats DOJ at Trial

2014 also saw the end of DOJ's recent perfect record in insider trading trials in the S.D.N.Y., when Rengan Rajaratnam was acquitted of insider trading charges by a jury in July 2014. As we have reported in previous Reviews, Rengan's older brother Raj was convicted in May 2011 on 14 counts of conspiracy and securities fraud and later sentenced to 11 years in prison. In March 2013, DOJ charged Rengan with one count of conspiring to commit securities fraud based on trades in Clearwire and AMD with his older brother and cooperators Rajiv Goel and Anil Kumar. DOJ also charged Rengan with six substantive securities fraud counts, alleging that he engaged in illegal trading in Clearwire based on information he learned from Raj.[67]

In February 2014, Rengan moved to dismiss the indictment and to suppress wiretap evidence. The use of wiretap evidence had played a key role in the government's conviction of Raj, in whose trial the jury heard more than 45 secretly recorded conversations involving Raj and his convicted co-conspirators. Raj had tried – and failed – to suppress this wiretap evidence on the basis that the government was not entitled to use

wiretaps to investigate insider trading, a crime not specified in Title III, and that the government's warrant application had failed to establish the need for the wiretap.[68] The Court of Appeals for the Second Circuit also rejected Raj's arguments on appeal, and affirmed his 11-year sentence.[69] Rengan argued that wiretap evidence could not be used against him, referring only to the briefs filed by Raj.[70] In April 2014, Judge Naomi Reice Buchwald denied Rengan's motion to suppress wiretap evidence, stating only that "defendant moves to suppress wiretap evidence, renewing arguments previously made by Raj. Because these arguments have been squarely rejected by the Second Circuit ... we deny the motion to suppress."[71]

While Judge Buchwald's ruling initially suggested that Rengan was poised to suffer the same fate at trial as his brother, the court also agreed with Rengan's contention that Counts Four and Seven of the indictment were inconsistent with Count One.[72] Specifically, the court reasoned that "Count One alleges that on March 24 and 25, 2008, Raj 'caused' the Galleon Tech Funds to buy 261,800 shares of Clearwire stock based on material, nonpublic information .... These are the same shares of stock that, according to Counts Four and Seven, defendant [Rengan] 'caused' the Galleon Tech Funds to purchase. Thus, Counts Four and Seven are inconsistent with Count One."[73] Judge Buchwald directed the government to come up with an alternate theory to form the basis of Counts Four and Seven before May 1, 2014 or these counts would be dismissed.

DOJ's case soon appeared to unravel. On May 1, 2014, the government notified the court that it did not intend to proceed with Counts 4 and 7 against Rengan. Then, on May 15, 2014, the government filed a superseding indictment dropping another two counts.[74]

The government proceeded with trial against Rengan on the remaining three conspiracy and securities fraud charges. But two weeks into trial, at the close of the government's case, the government suffered another blow when Judge Buchwald dismissed the two remaining substantive securities fraud charges against Rengan, leaving only the conspiracy charge. In dismissing these counts, Judge Buchwald held: "[C]an a reasonable jury find that Rengan traded ... on the basis of inside information obtained in violation of a duty of confidentiality and with a knowledge that the tipper receive a personal benefit .... I find that a reasonable jury could not so find."[75] This ruling echoed concerns that had recently been raised at oral arguments by the Second Circuit panel in the *Newman* case.

Ultimately, the jury took less than four hours to acquit Rengan on the only remaining count for conspiracy. This acquittal was the first trial loss by the U.S. Attorney's Office for the S.D.N.Y. since Operation Perfect Hedge began in 2009.

# THE SEC STRUGGLES AT TRIAL

### *The SEC's Trial Record*

Speaking of streaks, the SEC's losing streak in civil trials continued in 2014. Last year's Review focused on the SEC's high-profile loss against Mark Cuban in October 2013. In 2013, defendants also defeated insider trading claims in *SEC v. All Know Holdings Ltd.*; *SEC v. Kovzan*; *SEC v. Jensen*; and *SEC v. King Chuen Tang*. In 2014, that streak continued, with defendants prevailing at trial in eight more cases, including high profile losses for the SEC in *SEC v. Obus* (S.D.N.Y) and *SEC v. Moshayedi* (C.D. Cal.).[76]

Altogether, twenty-one individuals prevailed against the SEC in those thirteen cases from June 2013 through August 2014, either on summary judgment or at trial. In contrast, excluding consent judgments and judgments based on a criminal conviction or plea, the SEC had only one trial win and prevailed only once on summary judgment in insider trading cases during that time period, securing judgments against two individuals in each of those two cases.[77]

### *The SEC's Shift to Administrative Proceedings*

Not surprisingly, the SEC has grown shy of juries. In last year's Review, we highlighted the SEC's shift towards bringing more insider trading actions as administrative proceedings, and we included administrative proceeding outcomes in our compilation of SEC sanctions for the first time (prior years had included only enforcement actions filed in court). The trend picked up steam in 2014 and remains one to watch in 2015.

The SEC's increasing use of administrative proceedings generated heated public debate in 2014, most notably between Judge Jed Rakoff of the United States District Court for the Southern District of New York, and Andrew Ceresney, the Director of the SEC Division of Enforcement.

Back in 2011, Judge Rakoff refused to dismiss a suit brought by former Goldman Sachs director Rajat Gupta that challenged the SEC's use of an administrative proceeding on due process and equal protection grounds.[78]

On June 4, 2014, the Second Circuit vacated another opinion issued by Judge Rakoff in 2011, in which he had rejected the SEC's proposed Consent Decree with Citigroup Global Markets Inc.[79] In doing so, the Court noted that "to the extent that the S.E.C. does not wish to engage with the courts, it is free to eschew the involvement of the courts and employ its own arsenal of remedies instead."[80]

A week later, at a Washington D.C. Bar event, Mr. Ceresney reportedly acknowledged that the SEC was using administrative proceedings more than it had in the past, explained that he expected the SEC would continue to do so in the future, noted a number of benefits, and mentioned that the SEC had recently settled a number of matters after threatening to bring the actions as administrative proceedings.[81]

On August 5, 2014, Judge Rakoff approved the proposed Consent Decree between the SEC and Citigroup. In a separate opinion issued the same day, Judge Rakoff explained that he had no choice once "[t]hey who must be obeyed" had spoken on June 4th, leaving "this Court with nothing but sour grapes."[82] In a footnote, Judge Rakoff remarked:

> Indeed, the Court of Appeals invites the SEC to avoid even the extremely modest review it leaves to the district court by proceeding on a solely administrative basis. ("Finally, we note that to the extent that the S.E.C. does not wish to engage with the courts, it is free to eschew the involvement of the courts and employ its own arsenal of remedies instead." *Id.* at 297.) One might wonder: from where does the constitutional warrant for such unchecked and unbalanced administrative power derive?[83]

On November 5, 2014, at the PLI Securities Regulation Institute, Judge Rakoff devoted his keynote address to highlighting the "dangers that seem to me to lurk in the S.E.C.'s apparent new policy of bringing a greater percentage of its significant enforcement actions as administrative proceedings."[84] Judge Rakoff noted that the SEC's recent high profile trial losses and the many advantages to the SEC in bringing administrative proceedings, including streamlined discovery that does not provide defendants with an opportunity to take depositions or issue interrogatories, the ability to introduce hearsay evidence, and the fact that the cases are decided by an administrative law judge appointed and paid by the SEC. As a result, Judge Rakoff noted that it is "hardly surprising" that the SEC had a 100% win rate in administrative proceedings in its fiscal year ending September 30, 2014, as compared to a 61% win rate in court during the same time period.[85] (As discussed more fully below, the statistics cited by Judge Rakoff do not relate specifically to insider trading cases.)

The focus of Judge Rakoff's remarks was not procedural unfairness to defendants, but rather a concern for the development of the law. He noted that insider trading cases are typically brought under Section 10(b) of the Exchange

Act, an area of primarily judge-made law in which the SEC has resisted congressional intervention (at least until the *Newman* decision, that is). Judge Rakoff then expanded on those remarks while speaking on a panel at an event hosted by the Columbia University Law School on November 14, 2014.

At the same event at Columbia, SEC Chief Litigation Counsel Matthew Solomon defended the SEC's increased use of administrative proceedings. Mr. Ceresney then picked up the issue on November 21, 2014, in his remarks to the American Bar Association's Business Law Section Fall Meeting, which have also been made available on the SEC's website.

Judge Rakoff is not the only judge to have weighed in on this issue. Since Mr. Gupta challenged the use of administrative proceedings in 2011, a series of similar challenges has been brought before three other judges in the S.D.N.Y. – U.S. District Judges Lewis Kaplan, Katherine Forrest, and William Pauley III. On December 11, 2014, Judge Kaplan became the first to rule, rejecting the defendant's challenge and dismissing the case.[86]

In rejecting plaintiff's equal protection claim, Judge Kaplan noted that the "Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate."[87] With respect to the due process argument that the administrative proceeding schedule left insufficient time to prepare the defense, Judge Kaplan compared the situation of the plaintiffs to that of criminal defendants:

> Criminal defendants face trial every day in this and other courthouses – often with poorly paid, court-

appointed counsel because they cannot afford any private representation, let alone the same representation as "large corporate defendants." Those defendants, many of whom face peril far greater than the administrative penalties facing plaintiffs, cannot interrupt their prosecutions and trials to appeal an allegedly inadequate amount of time to prepare or an adverse discovery ruling.

> In almost every instance, they must await conviction and final judgment. Delaying judicial review does not violate these criminal defendants' due process rights any more than requiring plaintiffs to await final adjudication before the SEC would violate theirs.[88]

### Administrative Proceedings By The Numbers

Despite all of the debate about the use of administrative proceedings, there is little data from which to evaluate the impact. In 2013, the SEC filed 43 civil insider trading actions, 6 of which were commenced as administrative proceedings. In 2014, civil penalties were imposed on 13 defendants in SEC administrative proceedings, accounting for approximately 17% of the 77 civil penalties imposed in 2014. However, so far, all of the insider trading administrative proceedings to reach resolution in the last two years have been resolved by settlement.

There are a few administrative proceedings currently in progress, so this will remain a trend to watch for in 2015.

## COOPERATION STILL PAYS, JUST NOT AS MUCH AS IT USED TO

In recent years, our Review has focused on the benefits that cooperators have received in the form of reduced prison sentences and civil penalties. The decision whether to cooperate was a choice between (a) going to trial against seemingly unbeatable prosecutors or (b) joining a long line of cooperators who got probation after guilty pleas. But in 2014, the ground shifted. With the Second Circuit's *Newman* holding casting doubt on convictions and cooperator pleas alike, the swift Rengan Rajaratnam acquittal, and more cooperators getting sent to prison, the calculus is less clear.

The following chart updates the data presented in last year's Review to reflect 2014 sentencing, reversal of the Newman and Chiasson convictions, and the uncertainty that ruling creates for the sentences of Steinberg and Martoma.



The combined data for the last 5 years is reflected here:



The 2014 sentencing data stands out in a number of ways. First, ten cooperators received prison time in 2014, more than had been sentenced to prison in the prior four years combined, even though the number of cooperators sentenced in 2014 was less than in 2013 and equal to 2012.



Second, the gap in expected outcomes between cooperators and those who go to trial has narrowed substantially if one factors in the reversal of the Newman and Chiasson convictions, the doubt that ruling casts upon the Steinberg and Martoma convictions, and DOJ's loss in the Rengan Rajaratnam trial. In short, defendants can now factor in a real chance of acquittal if they go to trial, whereas conviction seemed all but inevitable just one year ago. If the *Newman* holding remains undisturbed and is followed in other circuits, we may well see a reduction in the absolute number of insider trading criminal cases (and SEC enforcement actions), as prosecutors forgo hard-to-win remote tippee cases.

Despite these developments, however, it remains true that cooperators receive lower prison sentences (on average 25% of the minimum guidelines in 2014), as compared to settling defendants who do not cooperate (35% of the minimum guidelines in 2014), and those who go to trial (35% of the minimum guideline in 2014). In total over the last five years, the numbers are more stark: cooperators received prison sentences of approximately 11% of the minimum guidelines on average, as compared

to 43% for settling non-cooperators, and 45% for those who went to trial.



The benefits of cooperation in 2014 also remained the most pronounced in the S.D.N.Y. The one cooperator sentenced in the S.D.N.Y. in 2014, Reemah Shah, received no prison time, whereas numerous non-cooperators received substantial prison time. In contrast, seven cooperators outside the S.D.N.Y. were sentenced to prison for more than one year, and non-cooperators' prison sentences were generally not as high outside the S.D.N.Y. The aggregate sentencing data from 2010 through 2014 shows a clear trend.



There are a number of potential explanations for the disparity in sentences inside and outside the S.D.N.Y. In recent years, prosecutors in the S.D.N.Y. compiled an impressive win record, largely with the benefit of cooperating witnesses in a series of related actions. The success of that approach may have provided additional incentive for prosecutors to encourage cooperation by recommending sentences of probation for cooperators. In addition, because there are more insider trading cases brought in the S.D.N.Y. than in all other districts combined, judges in the S.D.N.Y. may be less likely to impose as harsh a sentence on a cooperator as might a judge for which insider trading cases are more novel.

## INSIDER TRADING 2.0

Last year, our Review noted storm clouds on the horizon concerning high-frequency trading, which New York Attorney General Eric Schneiderman has long referred to as "Insider Trading 2.0." The storm hit with full force in March 2014, with the release of Michael Lewis' book, *Flash Boys: A Wall Street Revolt*, chronicling the rise of high-frequency trading on Wall Street. The book, released to great fanfare, was predictably followed by a class action lawsuit against scores of Wall Street firms and continued scrutiny from regulators and prosecutors.

On June 25, 2014, Attorney General Schneiderman sued Barclays Capital, Inc. and Barclays plc for alleged false statements concerning the operation of its "dark pool," in violation of New York's Martin Act and Section 63(12) of the Executive Law.[89] The complaint alleged:

> In short, contrary to Barclays' representations that it implemented special safeguards to protect clients from "aggressive,"

"predatory," or "toxic" high frequency traders, Barclays has operated its dark pool to favor high frequency traders. Barclays has actively sought to attract such traders to its dark pool, and it has given them advantages over others trading in the pool.[90]

A securities class action predictably followed on July 28, 2014, relying almost exclusively on the New York Attorney General's complaint to assert violations of Section 10(b) of the Exchange Act.[91] All defendants moved to dismiss the complaint. While high-frequency trading remains an important issue for the industry to address, and cases continue to work their way through the courts, the charges and claims do not involve insider trading, and the topic has, despite Attorney General Schneiderman's pithy label "Insider Trading 2.0," moved outside the scope of this Review.

## CONCLUSION

2014 was another big year for insider trading cases. Unlike the past few years, 2014 was as remarkable for the government's high-profile losses as for its successes. The swift Rengan Rajaratnam acquittal, the Second Circuit's *Newman* decision, and *Newman*'s still-rippling fallout fractured the prior invulnerability of the U.S. Attorney's Office for the S.D.N.Y.'s insider trading enforcement program.

The blockbuster *Newman* opinion fundamentally reshaped insider trading law. If the first few weeks of 2015 are any indication, the repercussions from the decision will be widespread. It remains to be seen whether the panel's decision will stand as controlling law in the Second Circuit and be followed in other circuits. In 2015, we expect to see numerous legal battles to define the future contours of insider trading law.

# APPENDICES

2014:  Penalties Imposed in Insider Trading
Prosecutions and SEC Enforcement Actions

**APPENDIX A:  CRIMINAL PROSECUTIONS**

| Date | Defendant | Role | Trial or Plea | Sentence |
|---|---|---|---|---|
| 1/21/2014 | Joseph Tocci <br><br> (*United States v. Tocci*, D. Mass. 2013) | Tippee | Plea | • 1 year supervised release <br> • Guidelines Calculation: Offense level 13 (12 to 18 months): <br> +8 base level <br> +8 gain <br> –3 acceptance of responsibility <br> • $100 special assessment |
| 1/28/2014 | Roger Williams <br><br> (*United States v. Femenia, et al.*, W.D.N.C. 2012) | Tippee | Plea (Cooperate) | • 24 months imprisonment plus 1 year supervised release <br> • Guidelines Calculation: Offense level 23 (46 to 57 months)[92] <br> • $100 special assessment |
| 1/28/2014 | Kenneth Raby <br><br> (*United States v. Femenia, et al.*, W.D.N.C. 2012) | Tippee | Plea (Cooperate) | • 18 months imprisonment plus 1 year supervised release <br> • Guidelines Calculation: Offense level 23 (46 to 57 months)[93] <br> • $100 special assessment |
| 1/28/2014 | Frank Burgess, Jr. <br><br> (*United States v. Femenia, et al.*, W.D.N.C. 2012) | Tippee | Plea (Cooperate) | • 6 months imprisonment plus 1 year supervised release (including 6 months home detention) <br> • Guidelines Calculation: Offense level 17 (24 to 30 months)[94] <br> • $100 special assessment <br> • 100 hours community service |
| 1/28/2014 | James Hayes, Jr. <br><br> (*United States v. Femenia, et al.*, W.D.N.C. 2012) | Tippee | Plea (Cooperate) | • 1 year supervised release (including 8 months home detention) <br> • Guidelines Calculation: Offense level 15 (18 to 24 months)[95] <br> • $100 special assessment <br> • 100 hours community service |

| Date | Defendant | Role | Trial or Plea | Sentence |
|------|-----------|------|---------------|----------|
| 2/28/2014 | Aaron Wens<br><br>(*United States v. Femenia, et al.*, W.D.N.C. 2012) | Tippee | Plea (Cooperate) | • 6 months imprisonment plus 1 year supervised release (including 6 months home detention)<br>• Guidelines Calculation: Offense level 17 (24 to 30 months)[96]<br>• $100 special assessment |
| 4/9/2014 | Lawrence Grum<br><br>(*United States v. Grum*, D.N.J. 2013) | Tippee | Plea | • 1 year and 1 day imprisonment plus 2 years supervised release<br>• Guidelines Calculation: Offense level 21 (37 to 46 months)[97]<br>• $600 special assessment |
| 4/9/2014 | Michael Castelli<br><br>(*United States v. Castelli*, D.N.J. 2013) | Tippee | Plea | • 9 months imprisonment plus 2 years supervised release<br>• Guidelines Calculation: Offense level 21 (37 to 46 months)[98]<br>• $700 special assessment |
| 4/9/2014 | Bassam Salman<br><br>(*United States v. Salman*, N.D. Cal. 2011) | Tippee | Trial | • 36 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 24 (51 to 63 months):<br>+8 base level<br>+16 gain<br>• $446,829.49 forfeiture<br>• $738,539.42 restitution<br>• $500 special assessment<br>• 250 hours community service |
| 4/10/2014 | SAC Entities[99]<br><br>(*United States v. SAC Capital Advisors LP, et al.*, S.D.N.Y. 2013) | Tippee | Plea | • 5 years probation<br>• Guidelines Calculation:<br>• The offense levels for the different SAC entities ranged from 28 to 36<br>• $900,000,000 forfeiture<br>• $900,000,000 fine<br>• $800 special assessment<br>• Termination of investment advisory business |
| 4/16/2014 | Mark Cupo<br><br>(*United States v. Cupo*, D.N.J. 2013) | Tipper/ Tippee | Plea (Cooperate) | • 16 months imprisonment plus 2 years supervised release<br>• Guidelines Calculation: Offense level 23 (46 to 57 months)[100]<br>• $700 special assessment |

| Date | Defendant | Role | Trial or Plea | Sentence |
|---|---|---|---|---|
| 4/16/2014 | Mark Foldy<br><br>(*United States v. Foldy*, D.N.J. 2013) | Tipper/ Tippee | Plea (Cooperate) | • 2 years supervised release (including 6 months home confinement)<br>• Guidelines Calculation: Offense level 19 (30 to 37 months)[101]<br>• $400 special assessment |
| 4/22/2014 | John Lazorchak<br><br>(*United States v. Lazorchak*, D.N.J. 2013) | Tipper | Plea (Cooperate) | • 16 months imprisonment plus 2 years supervised release<br>• Guidelines Calculation: Offense level 23 (46 to 57 months)[102]<br>• $600 special assessment |
| 4/24/2014 | Scott London<br><br>(*United States v. London*, C.D. Cal. 2013) | Tipper | Plea | • 14 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 23 (46 to 57 months):<br>+8 base level<br>+16 gain<br>+2 abuse of trust<br>-3 acceptance of responsibility<br>• $100,000 fine<br>• $100 special assessment |
| 5/5/2014 | Michael Pendolino<br><br>(*United States v. Pendolino*, D.N.J. 2013) | Tippee | Plea | • 1 year supervised release<br>• Guidelines Calculation: Offense level 13 (12 to 18 months):<br>+8 base level<br>+8 gain<br>-3 acceptance of responsibility<br>• $100 special assessment |
| 5/16/2014 | Michael Steinberg<br><br>(*United States v. Steinberg*, S.D.N.Y. 2012) | Tippee | Trial | • 42 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 24 (51 to 63 months):<br>+8 base level<br>+16 gain<br>• $365,142 forfeiture<br>• $2,000,000 fine<br>• $500 special assessment |

| Date | Defendant | Role | Trial or Plea | Sentence |
|---|---|---|---|---|
| 6/2/2014 | Bryan Shaw<br><br>(*United States v. Shaw*, C.D. Cal. 2013) | Tippee | Plea (Cooperate) | • 5 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 21 (37 to 46 months):<br>• +8 base level<br>• +16 gain<br>• -3 acceptance of responsibility<br>• $100 special assessment |
| 7/8/2014 | Eric Martin<br><br>(*United States v. Martin*, N.D. Ga. 2012) | Tipper/ Tippee | Plea (Cooperate) | • 24 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 24 (51 to 63 months)[103]<br>• $950,000 restitution<br>• $100 special assessment<br>• 80 hours of community service |
| 7/8/2014 | Richard Posey<br><br>(*United States v. Posey*, N.D. Ga. 2013) | Tipper | Plea (Cooperate) | • 15 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 24 (51 to 63 months)[104]<br>• $750,000 restitution<br>• $100 special assessment<br>• 80 hours of community service |
| 7/8/2014 | Mark Megalli<br><br>(*United States v. Megalli*, N.D. Ga. 2013) | Tippee | Plea | • 12 months and 1 day imprisonment plus 3 years supervised release and 100 hours of community service<br>• Guidelines Calculation: Offense level 22 (41 to 51 months)[105]<br>• $50,000 restitution<br>• $100 special assessment<br>• 100 hours of community service |
| 7/25/2014 | Sean Stokke<br><br>(*United States v. Stokke*, W.D. Wash. 2014) | Tippee | Plea (Cooperate) | • 18 months imprisonment plus 2 years supervised release<br>• Guidelines Calculation: Offense level 17 (24 to 30 months):<br>  +8 base level<br>  +12 gain<br>  -3 acceptance of responsibility<br>• $414,010 forfeiture<br>• $100 special assessment |

| Date | Defendant | Role | Trial or Plea | Sentence |
|------|-----------|------|---------------|----------|
| 8/1/2014 | Frank Hixon, Jr.<br><br>(*United States v. Hixon*, S.D.N.Y. 2014) | Tippee | Plea | • 30 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 23 (46 to 57 months):<br>+8 base level<br>+14 gain<br>+2 abuse of trust<br>+2 obstruction<br>-3 acceptance of responsibility<br>• $710,000 forfeiture<br>• $100,000 fine<br>• $1,204,777.80 restitution<br>• $600 special assessment |
| 8/7/2014 | Toby G. Scammell<br><br>(*United States v. Scammell*, C.D. Cal. 2013) | Tippee | Plea | • 3 months imprisonment plus 4 years supervised release (including 6 months home detention)<br>• Guidelines Calculation: Offense level 13 (12 to 18 months):<br>+8 base level<br>+10 gain<br>-2 downward variance<br>-3 acceptance of responsibility<br>• $122,494.05 restitution<br>• $100 special assessment |
| 8/8/2014 | Brian Jorgenson<br><br>(*United States v. Jorgenson*, W.D. Wash. 2014) | Tipper | Plea | • 24 months imprisonment plus 3 years supervised release<br>• Guidelines Calculation: Offense level 19 (30 to 37 months):<br>+8 base level<br>+14 gain<br>-3 acceptance of responsibility<br>• Forfeiture to be determined<br>• $100 special assessment |
| 9/2/2014 | Wade Clark<br><br>(*United States v. Clark*, S.D. Fla. 2014) | Tipper | Plea | • 3 years supervised release (including 1 year home detention)<br>• Guidelines Calculation: Offense level 6 (0 to 6 months):<br>+8 base level<br>-2 acceptance of responsibility<br>• $100 special assessment |

| Date | Defendant | Role | Trial or Plea | Sentence |
|---|---|---|---|---|
| 9/8/2014 | Matthew Martoma<br><br>(*United States v. Martoma,* S.D.N.Y. 2012) | Tippee | Trial | • 108 months plus 3 years supervised release<br>• Guidelines Calculation: Offense level 36 (188 to 235 months):<br>+8 base level<br>+28 gain<br>• $9,380,322 forfeiture<br>• $300 special assessment |
| 10/1/2014 | Christopher Saridakis<br><br>(*United States v. Saridakis,* E.D. Pa. 2014) | Tipper | Plea | • 15 months imprisonment plus 1 year supervised release<br>• Guidelines Calculation: Offense level 19 (30 to 37 months)[106]<br>• $10,000 fine<br>• $100 special assessment |
| 10/16/2014 | Matthew Teeple<br><br>(*United States v. Teeple,* S.D.N.Y. 2013) | Tippee/ Tipper | Plea | • 60 months imprisonment plus 1 year supervised release<br>• Guidelines Calculation: Offense level 27 (70 to 87 months)[107]<br>• $553,890 forfeiture<br>• $100,000 fine<br>• $100 special assessment |
| 10/24/2014 | Reema Shah<br><br>(*United States v. Shah,* S.D.N.Y. 2012) | Tippee/ Tipper | Plea (Cooperate) | • 2 years supervised release<br>• Guidelines Calculation: Offense level 17 (24 to 30 months)[108]<br>• $11,750.62 forfeiture<br>• $500,000 fine<br>• $200 special assessment |
| 12/10/2014 | Mounir Kara<br><br>(*United States v. Kara, et al.,* N.D. Cal. 2009) | Tippee/ Tipper | Plea (Cooperate) | • 3 years supervised release (including 6 months home confinement)<br>• Guidelines Calculation: Offense level 25 (57 to 71 months):<br>+8 base level<br>+18 gain<br>+2 obstruction<br>-3 acceptance of responsibility<br>• Forfeiture and restitution to be determined<br>• $200 special assessment |

| Date | Defendant | Role | Trial or Plea | Sentence |
|---|---|---|---|---|
| 12/19/2014 | Maher Kara<br><br>(*United States v. Kara, et al.*, N.D. Cal. 2009) | Tipper | Plea (Cooperate) | • 3 years supervised release (including 3 months home confinement)<br>• Guidelines Calculation: Offense level 25 (57 to 71 months):<br>+8 base level<br>+18 gain<br>+2 obstruction<br>-3 acceptance of responsibility<br>• $200 special assessment |

## APPENDIX B: SEC ENFORCEMENT ACTIONS

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 1/7/2014 | Waldyr Da Silva Prado Neto<br><br>(*SEC v. Da Silva Prado Neto*, S.D.N.Y. 2012) | Tippee/ Tipper | Default Judgment | • Permanent injunction<br>• $397,110.01 disgorgement<br>• $41,622.90 prejudgment interest<br>• $5,195,500 civil penalty<br>• Securities industry bar |
| 1/9/2014 | Mack D. Murrell<br><br>(*SEC v. Murrell, et al.*, E.D. Mich. 2013) | Tipper | Settlement | • Permanent injunction<br>• $367,250 civil penalty<br>• Officer/director bar |
| 1/9/2014 | Charles W. Adams<br><br>(*SEC v. Murrell, et al.*, E.D. Mich. 2013) | Tippee | Settlement | • Permanent injunction<br>• $64,450 disgorgement<br>• $13,285 prejudgment interest<br>• $107,046 civil penalty<br>• Securities industry bar |
| 1/9/2014 | Raymond James Financial Services, Inc.<br><br>(*SEC v. Murrell, et al.*, E.D. Mich. 2013) | Relief Defendant | Settlement | • $373,497 disgorgement<br>• $8,692 prejudgment interest |
| 1/9/2014 | Marcus Spillson<br><br>(*In the Matter of Marcus Spillson*, File No. 3-15675) | Tippee | Settlement | • Cease and desist order<br>• $154,821.91 disgorgement<br>• $10,635.57 prejudgment interest<br>• $154,821.91 civil penalty |
| 1/15/2014 | David Weishaus<br><br>(*SEC v. Conradt, et al.*, S.D.N.Y. 2012) | Tippee | Settlement | • Permanent injunction<br>• $127,485 disgorgement<br>• $20,414.24 prejudgment interest<br>• $127,485 civil penalty<br>• Securities industry bar |
| 1/27/2014 | CITIC Securities International Investment Management (HK) Limited<br><br>(*SEC v. Well Advantage Limited, et al.*, S.D.N.Y. 2012) | Tippee | Settlement | • Permanent injunction<br>• $3,299,596.84 disgorgement<br>• $3,299,596.84 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 2/7/2014 | Shui Chong (Eric) Chang<br><br>(*SEC v. Yang, et al.*, N.D. Ill. 2012) | Tippee | Settlement | • Permanent injunction<br>• $59,965 disgorgement<br>• $3,062.67 prejudgment interest<br>• $59,965 civil penalty |
| 2/7/2014 | Hao He<br><br>(*SEC v. He*, N.D. Ga. 2014) | Tippee | Settlement | • Permanent injunction<br>• $169,819.10 disgorgement<br>• $6,155.36 prejudgment interest<br>• $169,819.10 civil penalty |
| 2/11/2014 | China Shenghai Investment Management Limited, et al.<br><br>(*SEC v. Well Advantage Limited, et al.*, S.D.N.Y. 2012) | Relief Defendant | Settlement | • $4,268,057.16 disgorgement |
| 3/11/2014[109] | Toby G. Scammell<br><br>(*SEC v. Scammell*, C.D. Cal. 2011) | Tippee | Settlement | • Permanent injunction<br>• $192,497 disgorgement<br>• $30,997 prejudgment interest<br>• $577,491 civil penalty<br>• Securities industry bar |
| 3/13/2014 | Ronald N. Dennis<br><br>(*SEC v. Dennis*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $95,351 disgorgement<br>• $12,632.34 prejudgment interest<br>• $95,351 civil penalty<br>• Securities industry bar |
| 3/19/2014 | David J. Cancian<br><br>(*SEC v. Cancian*, D. Mass. 2014) | Tippee | Settlement | • Permanent injunction<br>• $46,930 disgorgement<br>• $3,983 prejudgment interest<br>• $46,930 civil penalty |
| 3/19/2014 | Wilfred Halpern<br><br>(*In the Matter of Wilfred Halpern*, File No. 3-15804) | Tippee | Settlement | • Cease and desist order<br>• $41,023 disgorgement<br>• $2,637.94 prejudgment interest<br>• $41,023 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|------|-----------|------|---------------------|---------|
| 3/25/2014 | John Kinnucan<br><br>(*SEC v. Kinnucan, et al.*, S.D.N.Y. 2012) | Tippee | Summary Judgment | • Permanent injunction<br>• $1,583,445.96 disgorgement (jointly/severally with Broadband)<br>• $199,790.14 prejudgment interest (jointly/severally with Broadband)<br>• $4,750,337.18 civil penalty (jointly/severally with Broadband) |
| 3/25/2014 | Broadband Research Corporation<br><br>(*SEC v. Kinnucan, et al.*, S.D.N.Y. 2012) | Tippee | Summary Judgment | • Permanent injunction<br>• $1,583,445.96 disgorgement (jointly/severally with Kinnucan)<br>• $199,790.14 prejudgment interest (jointly/severally with Kinnucan)<br>• $4,750,337.18 civil penalty (jointly/severally with Kinnucan) |
| 3/31/2014 | Ching Hwa Chen<br><br>(*SEC v. Chen*, N.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $138,068 disgorgement<br>• $4,297 prejudgment interest<br>• $138,068 civil penalty |
| 3/31/2014 | Tyrone Hawk<br><br>(*SEC v. Hawk*, N.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $151,480 disgorgement<br>• $2,654.52 prejudgment interest<br>• $151,480 civil penalty |
| 4/2/2014 | Richard T. Posey<br><br>(*SEC v. Posey*, N.D. Ga. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $49,778 disgorgement<br>• $10,487 prejudgment interest<br>• Civil penalty to be determined<br>• Officer/director bar |
| 4/3/2014 | Walter D. Wagner<br><br>(*SEC v. Wagner, et al.*, D. Md. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $517,784 disgorgement<br>• $10,391 prejudgment interest<br>• Civil penalty to be determined |
| 4/7/2014 | Lawrence Grum<br><br>(*SEC v. Lazorchak, et al.*, D.N.J. 2012) | Tippee | Settlement | • Permanent injunction<br>• $773,734.31 disgorgement<br>• $65,024.44 prejudgment interest |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 4/9/2014 | Michael Castelli<br><br>(*SEC v. Lazorchak, et al.,* D.N.J. 2012) | Tippee | Settlement | • Permanent injunction<br>• $657,772.45 disgorgement<br>• $58,436.45 prejudgment interest |
| 4/10/2014 | Michael Pendolino<br><br>(*SEC v. Lazorchak, et al.,* D.N.J. 2012) | Tippee | Settlement | • Permanent injunction<br>• $59,401.22 disgorgement<br>• $9,460.90 prejudgment interest |
| 4/17/2014 | Keith A. Seilhan<br><br>(*SEC v. Seilhan,* E.D. La. 2014) | Tippee | Settlement | • Permanent injunction<br>• $105,409 disgorgement<br>• $13,300 prejudgment interest<br>• $105,409 civil penalty |
| 4/21/2014 | Loretta Itri<br><br>(*SEC v. Itri, et al.,* D.N.J. 2014) | Tipper | Settlement | • Permanent injunction<br>• $64,300 civil penalty<br>• 5 year officer/director bar |
| 4/21/2014 | Neil Moskwitz<br><br>(*SEC v. Itri, et al.,* D.N.J. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $64,300 disgorgement<br>• $9,556 prejudgment interest<br>• $64,300 civil penalty |
| 4/21/2014 | Mathew Cashin<br><br>(*SEC v. Itri, et al.,* D.N.J. 2014) | Tippee | Settlement (Cooperate) | • Permanent injunction<br>• $75,140 disgorgement<br>• $10,955 prejudgment interest<br>• $37,570 civil penalty |
| 4/23/2014 | Chris Choi<br><br>(*SEC v. Choi,* S.D.N.Y. 2014) | Tipper | Settlement | • Permanent injunction<br>• $30,000 civil penalty<br>• 5 year officer/director bar |
| 4/25/2014 | Christopher Saridakis<br><br>(*SEC v. Saridakis, et al.,* E.D. Pa. 2014) | Tipper | Settlement | • Permanent injunction<br>• $41,060 disgorgement<br>• $31,858.22 prejudgment interest<br>• $619,904 civil penalty<br>• Officer/director bar |
| 4/25/2014 | Jules Gardner<br><br>(*SEC v. Saridakis, et al.,* E.D. Pa. 2014) | Tippee | Settlement (Cooperate) | • Permanent injunction<br>• $259,054.34 disgorgement<br>• No civil penalty given cooperation |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 4/25/2014 | Suken Shah (*In the Matter of Suken A. Shah*, File No. 3-15856) | Tippee/ Tipper | Settlement | • Cease and desist order<br>• $10,446 disgorgement<br>• $1,007 prejudgment interest<br>• $64,965 civil penalty |
| 4/25/2014 | Shimul Shah (*In the Matter of Shimul A. Shah*, File No. 3-15857) | Tippee/ Tipper | Settlement | • Cease and desist order<br>• $11,209 disgorgement<br>• $1,022 prejudgment interest<br>• $22,418 civil penalty |
| 4/25/2014 | Oded Gabay (*In the Matter of Oded Gabay*, File No. 3-15854) | Tippee/ Tipper | Settlement (Cooperate) | • Cease and desist order<br>• $23,615 disgorgement<br>• $1,027 prejudgment interest<br>• $22,177 civil penalty |
| 4/25/2014 | Aharon Yehuda (*In the Matter of Aharon R. Yehuda*, File No. 3-15855) | Tippee | Settlement | • Cease and desist order<br>• $20,740 disgorgement<br>• $1,666 prejudgment interest<br>• $20,740 civil penalty |
| 5/6/2014 | John Campani (*SEC v. Campani*, D.N.J. 2014) | Tippee | Settlement | • Permanent injunction<br>• $29,087 disgorgement and prejudgment interest<br>• $13,350 civil penalty |
| 5/6/2014 | John Mullin (*SEC v. Mullin*, D.N.J. 2014) | Tippee | Settlement | • Permanent injunction<br>• $11,346 disgorgement and prejudgment interest<br>• $5,225 civil penalty |
| 5/6/2014 | Alan Posner (*SEC v. Posner*, D.N.J. 2014) | Tippee | Settlement | • Permanent injunction<br>• $73,730 disgorgement and prejudgment interest<br>• $33,955 civil penalty |
| 5/12/2014 | Herbert Richard Lawson (*SEC v. Lawson, et al.*, N.D. Cal. 2014) | Tipper | Settlement | • Permanent injunction<br>• $1,557,384.57 civil penalty<br>• Officer/director bar |
| 5/12/2014 | William Lawson (*SEC v. Lawson, et al.*, N.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $1,853,671.28 disgorgement<br>• $162,442.60 prejudgment interest<br>• $1,853,671.28 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 5/12/2014 | John Cerullo<br><br>(*SEC v. Lawson, et al.*, N.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $178,481.29 disgorgement<br>• $15,640.81 prejudgment interest<br>• $178,481.29 civil penalty |
| 5/13/2014 | Christopher D. Wiest<br><br>(*In the matter of Christopher D. Wiest*, File No. 3-15870) | Tippee | Settlement | • Cease and desist order<br>• $56,292 disgorgement<br>• $5,122.97 prejudgment interest<br>• $56,292 civil penalty |
| 5/19/2014 | Franklin M. Chu<br><br>(*SEC v. Chu*, C.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $34,081 disgorgement<br>• $2,014 prejudgment interest<br>• $34,081 civil penalty |
| 5/19/2014 | Daniel J. Lama<br><br>(*SEC v. Lama*, C.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $11,502 disgorgement<br>• $680 prejudgment interest<br>• $34,506 civil penalty |
| 5/22/2014 | Glenn Cohen<br><br>(*SEC v. Cohen, et al.*, S.D.N.Y. 2014) | Tipper | Settlement | • Permanent injunction<br>• $153,613.25 civil penalty<br>• Officer/director bar |
| 5/22/2014 | Marc Cohen<br><br>(*SEC v. Cohen, et al.*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $21,454 disgorgement<br>• $2,865 prejudgment interest<br>• $21,454 civil penalty |
| 5/22/2014 | Craig Cohen<br><br>(*SEC v. Cohen, et al.*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $71,932 disgorgement<br>• $9,606 prejudgment interest<br>• $71,932 civil penalty |
| 5/22/2014 | Steven Cohen<br><br>(*SEC v. Cohen, et al.*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $60,226 disgorgement<br>• $8,042 prejudgment interest<br>• $60,226 civil penalty |
| 5/22/2014 | Laurie Topal<br><br>(*SEC v. Cohen, et al.*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $21,780 disgorgement<br>• $2,908 prejudgment interest<br>• $21,780 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 5/27/2014 | Ronald L. Drewery<br><br>(*SEC v. Drewery*, E.D.N.C. 2014) | Tippee | Settlement | • Permanent injunction<br>• $39,376.50 disgorgement and prejudgment interest<br>• $35,730 civil penalty |
| 6/3/2014 | Michael Fleischli<br><br>(*SEC v. Cohen, et al.*, S.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $3,007 disgorgement<br>• $298.50 prejudgment interest<br>• $3,007 civil penalty |
| 6/4/2014 | Earl C. Arrowood<br><br>(*SEC v. Arrowood, et al.*, N.D. Ga. 2012) | Tippee | Settlement | • Permanent injunction<br>• $9,899 disgorgement<br>• $2,793 prejudgment interest<br>• $9,899 civil penalty |
| 6/10/2014 | Michael J. Baron<br><br>(*SEC v. Baron*, D.N.J. 2014) | Tippee/Tipper | Settlement | • Permanent injunction<br>• $6,825 disgorgement and prejudgment interest<br>• $3,400 civil penalty |
| 6/13/2014 | Shahid Khan<br><br>(*SEC v. Khan, et al.*, N.D. Cal. 2014) | Relief Defendant | Settlement | • $240,741 disgorgement |
| 6/13/2014 | Michael Koza<br><br>(*SEC v. Khan, et al.*, N.D. Cal. 2014) | Relief Defendant | Settlement | • $31,713 disgorgement |
| 7/11/2014 | Douglas Clapp<br><br>(*SEC v. McPhail, et al.*, D. Mass. 2014) | Tippee | Settlement | • Permanent injunction<br>• $11,848 disgorgement<br>• $1,767 prejudgment interest<br>• $11,848 civil penalty |
| 7/11/2014 | John Gilmartin<br><br>(*SEC v. McPhail, et al.*, D. Mass. 2014) | Tippee | Settlement | • Permanent injunction<br>• $23,713 disgorgement<br>• $4,034 prejudgment interest<br>• $23,713 civil penalty |
| 7/11/2014 | James Drohen<br><br>(*SEC v. McPhail, et al.*, D. Mass. 2014) | Tippee | Settlement | • Permanent injunction<br>• $22,543 disgorgement<br>• $3,845 prejudgment interest<br>• $22,543 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 7/11/2014 | John Drohen<br><br>(*SEC v. McPhail, et al.*, D. Mass. 2014) | Tippee | Settlement | • Permanent injunction<br>• $8,972 disgorgement<br>• $1,511 prejudgment interest<br>• $8,972 civil penalty |
| 7/18/2014 | Cedric Canas Maillard<br><br>(*SEC v. Maillard, et al.*, S.D.N.Y. 2013) | Tippee | Settlement | • Permanent injunction<br>• $960,806 disgorgement<br>• $960,806 civil penalty |
| 7/22/2014 | Kevin McGrath<br><br>(*SEC v. McGrath*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $11,776 disgorgement<br>• $1,492 prejudgment interest<br>• $11,776 civil penalty |
| 8/4/2014 | Stephen Diltz<br><br>(*SEC v. Van Gilder, et al.*, D. Colo. 2012) | Relief Defendant | Settlement | • $50,935 disgorgement<br>• $10,840 prejudgment interest |
| 8/14/2014 | Donald Toth<br><br>(*SEC v. Toth, et al.*, N.D. Ga. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $19,036 disgorgement<br>• $1,224.09 prejudgment interest<br>• $103,935.50 civil penalty |
| 8/14/2014 | James Nash<br><br>(*SEC v. Toth, et al.*, N.D. Ga. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $52,500 disgorgement<br>• $3,375.96 prejudgment interest<br>• $52,500 civil penalty |
| 8/14/2014 | Blair Schlossberg<br><br>(*SEC v. Manoah, et al.*, M.D. Fla. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $46,358.50 disgorgement<br>• $2,981.02 prejudgment interest<br>• $46,358.50 civil penalty |
| 8/14/2014 | Mashe Manoah<br><br>(*SEC v. Manoah, et al.*, M.D. Fla. 2014) | Tippee | Settlement | • Permanent injunction<br>• $46,358.50 disgorgement<br>• $2,981.02 prejudgment interest<br>• $46,358.50 civil penalty |
| 9/12/2014 | Michael Van Gilder<br><br>(*SEC v. Van Gilder, et al.*, D. Colo. 2012) | Tippee | Settlement | • Permanent injunction<br>• $109,265 disgorgement<br>• $22,667 prejudgment interest<br>• $109,265 civil penalty |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|---|---|---|---|---|
| 9/23/2014 | David Roskein<br><br>(*In the Matter of David Roskein*, File No. 3-16158) | Tippee | Settlement | • Cease and desist order<br>• $42,833.78 disgorgement<br>• $4,717.09 prejudgment interest<br>• $42,833.78 civil penalty |
| 9/24/2014 | Richard O'Leary<br><br>(*In the Matter of Richard O'Leary*, File No. 3-16166) | Tippee | Settlement | • Cease and desist order<br>• $6,845 disgorgement<br>• $313 prejudgment interest<br>• $6,845 civil penalty<br>• 1 year securities industry suspension |
| 9/30/2014 | Filip Szymik<br><br>(*In the Matter of Filip Szymik*, File No. 3-16183) | Tipper | Settlement | • Cease and desist order<br>• $47,100 civil penalty |
| 10/16/2014 | Michael Lucarelli<br><br>(*SEC v. Lucarelli*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• Disgorgement and prejudgment interest to be determined<br>• Civil penalty to be determined |
| 10/21/2014 | John Monroe<br><br>(*SEC v. Carroll, et al.*, W.D. Ky. 2011) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $31,107.25 disgorgement<br>• $8,155.01 prejudgment interest<br>• $50,737.74 civil penalty |
| 10/23/2014 | Rengan Rajaratnam<br><br>(*SEC v. Rajaratnam*, S.D.N.Y. 2013) | Tippee | Settlement | • Permanent injunction<br>• $372,264.42 disgorgement<br>• $96,714.27 prejudgment interest<br>• $372,264.42 civil penalty<br>• 5 year securities industry bar |
| 11/4/2014 | Steven Williams<br><br>(*In the Matter of Steven Williams*, File No. 3-16246) | Tippee | Settlement | • Cease and desist order<br>• $103,712 disgorgement<br>• $75,000 civil penalty<br>• 2 year officer/director bar |
| 11/12/2014 | Michael Geist<br><br>(*In the Matter of Michael Geist, et al.*, File No. 3-16269) | Tipper | Settlement | • Cease and desist order<br>• $27,303.85 disgorgement<br>• $3,441.09 prejudgment interest<br>• $27,303.85 civil penalty<br>• 5 year officer/director bar |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|------|-----------|------|---------------------|---------|
| 11/12/2014 | Brent Taylor<br><br>(*In the Matter of Michael Geist, et al.*, File No. 3-16269) | Tippee | Settlement | • Cease and desist order<br>• $46,828.86 disgorgement<br>• $11,808.74 prejudgment interest<br>• $46,828.86 civil penalty<br>• 5 year officer/director bar |
| 11/21/2014 | William Redmond Jr.<br><br>(*SEC v. Redmond, et al.*, S.D.N.Y. 2014) | Tipper | Settlement | • Permanent injunction<br>• $149,139 disgorgement<br>• $26,052 prejudgment interest<br>• $64,821 civil penalty<br>• 5 year officer/director bar |
| 11/21/2014 | Stefano Signorastri<br><br>(*SEC v. Redmond, et al.*, S.D.N.Y. 2014) | Tippee | Settlement | • Permanent injunction<br>• $21,283 disgorgement<br>• $3,717 prejudgment interest<br>• $59,609 civil penalty |
| 11/25/2014 | D. Michael Donnelly<br><br>(*SEC v. Donnelly*, E.D. Mo. 2014) | Tippee | Settlement | • Permanent injunction<br>• $104,391 disgorgement<br>• $8,371.71 prejudgment interest<br>• $104,391 civil penalty<br>• Officer/director bar |
| 12/8/2014[110] | Reema Shah<br><br>(*SEC v. Shah, et al.*, S.D.N.Y. 2012) | Tippee/ Tipper | Settlement (Cooperate) | • Permanent injunction<br>• $388,807 disgorgement<br>• $1,296 prejudgment interest<br>• No civil penalty in light of cooperation and sanctions in criminal case |
| 12/12/2014 | Kenneth Raby<br><br>(*SEC v. Femenia*, et al., W.D.N.C. 2012) | Tippee | Settlement | • Permanent injunction<br>• Disgorgement to be determined<br>• Prejudgment interest to be determined<br>• Civil penalty to be determined |
| 12/12/2014 | Roger Williams<br><br>(*SEC v. Femenia*, et al., W.D.N.C. 2012) | Tippee | Settlement | • Permanent injunction<br>• Disgorgement to be determined<br>• Prejudgment interest to be determined<br>• Civil penalty to be determined |

| Date | Defendant | Role | Trial or Settlement | Outcome |
|------|-----------|------|---------------------|---------|
| 12/18/2014 | Robert Herman<br><br>(*SEC v. Cohen, et al.*, S.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $29,318 disgorgement<br>• $3,391 prejudgment interest<br>• $29,318 civil penalty |
| 12/22/2014 | Shivbir Grewal<br><br>(*SEC v. Grewal, et. al.*, C.D. Cal. 2014) | Tippee/ Tipper | Settlement | • Permanent injunction<br>• $30,343.17 disgorgement<br>• $997.68 prejudgment interest<br>• $30,343.17 civil penalty<br>• Suspension from practicing as an attorney before the SEC |
| 12/22/2014 | Preetinder Grewal<br><br>(*SEC v. Grewal, et. al.*, C.D. Cal. 2014) | Tippee | Settlement | • Permanent injunction<br>• $14,400.05 disgorgement<br>• $476.73 prejudgment interest<br>• $14,400.05 civil penalty |

[1] *Chiarella v. United States*, 445 U.S. 222 (1980).

[2] *United States v. O'Hagan*, 521 U.S. 642 (1997).

[3] *See SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012).

[4] *Id.*

[5] Nos. 13-1837-cr(L), 13-1917-cr(con) (2d Cir. Dec. 10, 2014), ECF No. 262.

[6] *Id.* at 22.

[7] 17 C.F.R. § 240.14e-3.

[8] Commodity Futures Modernization Act of 2000, Pub. L. No. 106-554, § 1(a)(5), 114 Stat. 2763 (Dec. 21, 2000) (codified at 15 U.S.C. § 78j(b)).

[9] 15 U.S.C. § 78t-1.

[10] Damages in an action under Section 20A are capped at the insider's profits gained or losses avoided and are offset by any amount that the insider is required to disgorge to the SEC. 15 U.S.C. § 78t-1.

[11] Opinion at 4, *United States v. Newman*, Nos. 13-1837-cr(L), 13-1917-cr(con) (2d Cir. Dec. 10, 2014), ECF No. 262 (emphasis in original).

[12] *Id.* at 13-14.

[13] *Id.* at 14 (emphasis in original).

[14] *Id.* at 17.

[15] *Id.*

[16] *Id.* at 17 n.5.

[17] Opinion at 17, *SEC v. Obus*, No. 10-4749-cv (2d Cir. Sept. 6, 2012), ECF No. 139.

[18] *Newman* at 21-22.

[19] *Id.* at 22.

[20] *Id.* at 23.

[21] *Id.* at 4.

[22] Order, *SEC v. Newman, et al.*, No. 12-cv-0409 (SAS) (S.D.N.Y. Dec. 23, 2014), ECF. No. 102.

[23] Petition of the United States of America for Rehearing and Rehearing *En Banc* at 10-11, *United States v. Newman*, ECF No. 279.

[24] *Id.* at 9 (citations and internal quotation marks omitted).

[25] *Id.* at 15.

[26] *Id.* at 19-20.

[27] *Id.* at 20 (citations and internal quotation marks omitted).

[28] Brief for the Securities and Exchange Commission as Amicus Curiae Supporting the Petition of the United States for Rehearing or Rehearing En Banc at 1, *United States v. Newman*, Nos. 13-1837-cr(L), 13-1917-cr(con) (2d Cir. Jan. 29, 2015), ECF No. 298.

[29] Order, *United States v. Newman*, Nos. 13-1837-cr(L), 13-1917-cr(con) (2d Cir. Jan, 29, 2015), ECF No. 301.

[30] Order Granting Motion, *United States v. Michael Steinberg*, No. 14-2141 (2d Cir. Dec. 31, 2014), ECF No. 32.

[31] *See* Superseding Information (Danny Kuo), *United States v. Newman, et al.*, No. 12 Cr. 121 (RJS) (S.D.N.Y. April 13, 2012), ECF No. 46; Information (Hyung G. Lim), *United States v. Newman, et al.*, No. 12 Cr. 121 (RJS) (S.D.N.Y. Sept. 4, 2012), ECF No. 114.

[32] *See* Letter Motion at 2, *United States v. Danny Kuo*, No. 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 11, 2014), ECF No. 417.

[33] *See* Indictment, *United States v. Conradt, et al.*, No. 12 Cr. 887 (S.D.N.Y. Nov. 28, 2012), ECF No. 3.

[34] *See* Transcript at 17:20-22, *United States v. Conradt, et al.*, No. 12 Cr. 887 (S.D.N.Y. Nov. 28, 2012), ECF No. 143.

[35] Memorandum of Law in Support of the Sufficiency of the Defendants' Guilty Pleas at 2, *United States v. Conradt, et al.*, No. 12 Cr. 887 (S.D.N.Y. Nov. 28, 2012), ECF No. 153.

[36] *Id.*

[37] *United States v. O'Hagan*, 521 U.S. 642, 654 (1997).

[38] *Id.* at 10.

[39] *Id.* (citing *SEC v. Musella*, 748 F. Supp. 1028, 1038 n.4 (S.D.N.Y. 1989)).

[40] Order at 2, *United States v. Conradt, et al.*, No. 12 Cr. 887 (S.D.N.Y. Jan. 22, 2015), ECF No. 166 (citing *Newman* at 4) (citation omitted).

[41] *Id.*

[42] Letter at 2, *United States v. Conradt, et al.*, No. 12 Cr. 887 (S.D.N.Y. Jan. 28, 2015), ECF No. 167.

[43] *See* Ed Beeson, "Judge To Dismiss IBM Insider Trading Case At Feds' Request" Law360 (Jan. 29, 2015), *available at* http://www.law360.com/whitecollar/articles/616277?nl_pk=98af123c-2c10-4e67-ae03-6f753f442344&utm_source=newsletter&utm_medium=email&utm_campaign=whitecollar.

[44] Indictment, *United States v. Riley*, No. 13-cr-00339-VEC (S.D.N.Y. May 8, 2013), ECF No. 13.

[45] Nate Raymond, "1-Ex-Foundry Networks executive found guilty of insider trading," Reuters (Oct. 2, 2014), *available at* http://www.reuters.com/article/2014/10/02/usa-insidertrading-idUSL2N0RX1F120141002.

[46] Memorandum of Law in Support of Defendant's Motion for a Judgment of Acquittal, and, Alternatively, for a New Trial, *United States v. Riley*, No. 13-cr-00339-VEC (S.D.N.Y Dec. 29, 2014), ECF No. 234.

[47] *Carpenter v. United States*, 484 U.S. 19 (1987).

[48] In *Carpenter*, the Supreme Court was not required to address whether a personal benefit to the tipper was required to support the mail and wire fraud convictions because the tipper in *Carpenter* – *Wall Street Journal* columnist R. Foster Winans – shared in the proceeds from his tippees' trading. *Carpenter*, 484 U.S. at 27 ("The District Court found that Winans' undertaking at the Journal was not to reveal prepublication information about his column, a promise that became a sham when in violation of his duty he passed along to his co-conspirators confidential information belonging to the Journal, pursuant to *an ongoing scheme to share profits from trading* in anticipation of the 'Heard' column's impact on the stock market." (emphasis added)). Nonetheless, the Court's analysis can be read to support a personal benefit requirement under the mail and wire fraud statutes. Among other things, in finding the tipper's misappropriation to be fraudulent, the Court relied on precedents holding "'as a general proposition, that a person who acquires special knowledge or information by virtue of a confidential or fiduciary relationship with another is not free to exploit that knowledge or information *for his own personal benefit* but must account to his principal for any profits derived therefrom.'" *Carpenter*, 484 U.S. at 27 (quoting *Diamond v. Oreamuno*, 24 N.Y.2d 494, 497 (1969)).

[49] 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) (emphasis added).

[50] Any resuscitation of the criminal mail and wire fraud statutes in prosecutions of insider trading will, of course, be of no use to the SEC in civil enforcement actions.

[51] *See Schmuck v. United States*, 489 U.S. 705, 721 (1989) ("There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)."); *Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the [o]ffense of mail fraud under . . . § 1341, are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme.").

[52] Opinion, *Newman* at 16.

[53] *Id.* at 18 (quoting *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010)).

[54] *See* SEC Release No. 73262, In the Matter of Filip Szymik (Sept. 30, 2014), *available at* http://www.sec.gov/litigation/admin/2014/34-73262.pdf.

[55] *See* SEC Release No. 73263, In the Matter of Jordan Peixoto (Sept. 30, 2014), *available at* http://www.sec.gov/litigation/admin/2014/34-73263.pdf. The SEC did not charge Adamski.

[56] *See, e.g.*, In the Matter of Michael S. Geist, Adm. Proc. File No. 3-16269 (Nov. 12, 2014); In the Matter of Steven Durrelle Williams, Adm. Proc. File No. 3-146246 (Nov. 3, 2014); *see also* Stephen Joyce, "SEC to Use Administrative Cases More. Despite Defense Bar Complaints, Officials Say," BNA Corporate Law & Accountability Report (Nov. 7, 2014), *available at* http://www.bna.com/sec-administrative-cases-n17179911882/.

[57] *See* SEC Release No. 2133, In the Matter of Jordan Peixoto (Dec. 15, 2014), *available at* http://www.sec.gov/alj/aljorders/2014/ap-2133.pdf.

[58] SEC Release No. 2081, In the Matter of Jordan Peixoto (Dec. 3, 2014), *available at* http://www.sec.gov/alj/aljorders/2014/ap-2081.pdf.

[59] SEC Release No. 73263 at ¶ 22.

[60] According to news reports, Szymik's attorneys have said that they will move to vacate his settlement based on *Newman*. *See* Ed Beeson, "SEC Hits Limits in Collapsed Herbalife Insider Case," Law360 (Dec. 19, 2014), *available at* http://www.law360.com/whitecollar/articles/606128?nl_pk=98af123c-2c10-4e67-ae03-6f753f442344&utm_source=newsletter&utm_medium=email&utm_campaign=whitecollar.

[61] Indictment, *United States v. Mathew Martoma*, No. 12 Cr. 973 (S.D.N.Y. Dec. 21, 2012), ECF No. 7.

[62] Matthew Goldstein & Alexandra Stevenson, "Ex-SAC Trader Was Expelled From Harvard Law School," *New York Times* (Jan. 9, 2014), *available at* http://dealbook.nytimes.com/2014/01/09/ex-sac-trader-was-expelled-from-harvard-law-school/?_r=0.

[63] Christopher M. Matthews & John Carreyrou, "Ex-SAC Trader Found Guilty", *Wall Street Journal* (Feb. 7, 2014), *available at* http://www.wsj.com/articles/SB10001424052702303496804579367053560716722.

[64] *See* Memorandum Opinion & Order, *United States v. Mathew Martoma*, No. 12 Cr. 973 (S.D.N.Y. Sept. 8, 2014), ECF No. 306.

[65] Matthew Goldstein, "Martoma Starts Serving 9-Year Sentence for Insider Trading," *New York Times* (Nov. 21, 2014), *available at* http://dealbook.nytimes.com/2014/11/21/martoma-starts-serving-9-year-sentence-for-insider-trading/?_r=0.

[66] *See* Emergency Motion for Bail Pending Appeal, *United States v. Mathew Martoma*, No. 14-3599 (2d Cir. Oct. 29, 2014), ECF No. 27.

[67] *See* Indictment, *United States v. Rajarengan Rajaratnam*, No. 13 Cr. 211 (NRB) (S.D.N.Y. March 20, 2013), ECF No. 2.

[68] Memorandum and Opinion at 1, *United States v. Rajaratnam, et al.*, No. 09-Cr-1184 (RJH) (S.D.N.Y. Nov. 29, 2010), ECF No. 148.

[69] *See United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013).

[70] *See* Memorandum of Law in Support of Motion to Dismiss and Motion to Suppress Wiretap Evidence, No. 13 Cr. 211 (NRB) (S.D.N.Y. Feb. 7, 2014), ECF No. 36.

[71] *See* Memorandum and Order at 19, *United States v. Rajarengan Rajaratnam*, No. 13 Cr. 211 (NRB) (S.D.N.Y. April 18, 2014), ECF No. 49.

[72] *Id.*

[73] *Id.* at 16-17.

[74] Superseding Indictment, *United States v. Rajarengan Rajaratnam*, No. 13 Cr. 211 (NRB) (S.D.N.Y. May 15, 2014), ECF No. 76.

[75] Transcript, *United States v. Rajarengan Rajaratnam*, No. 13 Cr. 211 (NRB) (S.D.N.Y. July 1, 2014), ECF No. 149.

[76] The eight cases were: *SEC v. Schvacho*, 991 F. Supp. 2d 1284 (N.D. Ga. 2014); *SEC v. Yang*, 999 F. Supp. 2d 1007 (N.D. Ill. 2013); *SEC v. Steffes*, 805 F. Supp. 2d 601 (N.D. Ill. 2011); *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012); Final Judgment, *SEC v. Moshayedi*, No. 8:12-CV-01179-JVS-ANx (C.D. Cal. June 11, 2014), ECF No. 473; *SEC v. Wyly*, 950 F. Supp. 2d 547 (S.D.N.Y. 2013); *SEC v. Bauer*, 723 F.3d 758 (7th Cir. 2013); *SEC v. Arrowood*, No. 1:12-CV-82-RWS, 2013 WL 4028907 (N.D. Ga. Aug. 7, 2013).

[77] Jury Verdict, *SEC v. Jacobs, et al.*, No. 1:13 CV 1289 (N.D. Ohio Mar. 7, 2014), ECF No. 96; Order granting Motion for Summary Judgment, *SEC v. Ferrone, et al.*, No. 1:11-cv-05223 (N.D. Ill. Oct. 10, 2014), ECF No. 93.

[78] Opinion and Order, *Gupta v. SEC*, No. 11 Civ. 1900 (JSR) (S.D.N.Y. July 11, 2011), ECF No. 23.

[79] *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014).

[80] *Id.*

[81] Brian Mahoney, "SEC Could Bring More Insider Trading Cases In-House." Law360 (June 11, 2014), *available at* http://www.law360.com/articles/547183/sec-could-bring-more-insider-trading-cases-in-house.

[82] Opinion at 1, 3, *SEC v. Citigroup Global Markets, Inc.*, No. 11-cv-7387 (JSR), (S.D.N.Y. August 5, 2014), ECF No. 59.

[83] *Id.* at 3 n.8.

[84] Jed Rakoff, "Is the S.E.C. Becoming A Law Unto Itself?" PLI Securities Regulation Institute Keynote Address, (Nov. 5, 2014), *available at* https://securitiesdiary.files.wordpress.com/2014/11/rakoff-pli-speech.pdf.

[85] *Id.*

[86] Memorandum Opinion, *Chau, et al., v. SEC*, No. 14-cv-1903 (LAK) (S.D.N.Y. Dec. 11, 2014), ECF No. 27.

[87] *Id.* at 14.

[88] *Id.* at 22.

[89] Complaint, *People of the State of New York v. Barclays Capital, Inc., et al.*, No. 451391/2014 (Sup. Ct., New York County, June 25, 2014) NYSCEF No. 1. Disclosure: Morrison & Foerster LLP represents an individual defendant in this action.

[90] *Id.* at 1-2.

[91] Complaint for Violation of the Federal Securities Laws, *Strougo v. Barclays PLC, et al.*, No. 1:14-cv-05797-SAS (S.D.N.Y. July 28, 2014), ECF No. 1. Disclosure: Morrison & Foerster represents one of the individual defendants in *Strougo*.

[92] Precise calculation unknown; it was publicly reported that Mr. Williams faced between 46 and 57 months in prison under the Guidelines.

[93] Precise calculation unknown; it was publicly reported that Mr. Raby faced between 46 and 57 months in prison under the Guidelines.

[94] Precise calculation unknown; it was publicly reported that Mr. Burgess faced between 24 and 30 months in prison under the Guidelines.

[95] Precise calculation unknown; it was publicly reported that Mr. Hayes faced between 18 and 24 months in prison under the Guidelines.

[96] Precise calculation unknown; it was publicly reported that Mr. Wens faced between 24 and 30 months in prison under the Guidelines.

[97] Precise calculation unknown; it was publicly reported that Mr. Grum faced between 37 and 46 months in prison under the Guidelines.

[98] Precise calculation unknown; it was publicly reported that Mr. Castelli faced between 37 and 46 months in prison under the Guidelines.

[99] The SAC Entities include S.A.C. Capital Advisors LLC; S.A.C. Capital Advisors, L.P.; Sigma Capital Management, LLC; and CR Intrinsic Investors LLC.

[100] Precise calculation unknown; it was publicly reported that Mr. Cupo faced between 46 and 57 months in prison under the Guidelines.

[101] Precise calculation unknown; it was publicly reported that Mr. Foldy faced between 30 and 37 months in prison under the Guidelines.

[102] Precise calculation unknown; it was publicly reported that Mr. Lazorchak faced between 46 and 57 months in prison under the Guidelines.

[103] Precise calculation unknown; it was publicly reported that Mr. Martin faced between 51 and 63 months in prison under the Guidelines.

[104] Precise calculation unknown; it was publicly reported that Mr. Posey faced between 51 and 63 months in prison under the Guidelines.

[105] Precise calculation unknown; it was publicly reported that Mr. Megalli faced between 41 and 51 months in prison under the Guidelines.

[106] Precise calculation unknown; it was publicly reported that Mr. Saridakis faced between 30 and 37 months in prison under the Guidelines.

[107] Precise calculation unknown; it was publicly reported that Mr. Teeple faced between 70 and 87 months in prison under the Guidelines.

[108] Precise calculation unknown; it was publicly reported that Ms. Shah faced between 24 and 30 months in prison under the Guidelines.

[109] Judgment (without agreement to any disgorgement and civil penalty amounts) was entered originally against Mr. Scammell on June 15, 2012.

[110] Judgment (without agreement to any disgorgement and civil penalty amounts) was entered originally against Ms. Shah on October 12, 2012.

# WHITE-COLLAR CRIMINAL DEFENSE PRACTICE GROUP

Morrison & Foerster LLP is a recognized leader in all aspects of white-collar criminal defense. Our group includes prominent attorneys with decades of experience, former prosecutors, former SEC enforcement attorneys, former senior officials of the CFTC and FINRA, and in-house forensic accounting experts. We have extensive criminal trial experience and can efficiently manage internal and external investigations, as well as parallel proceedings with multiple enforcement and regulatory authorities. We have led some of our clients' most sensitive matters in diverse industries including computer hardware and software, consumer products, energy and natural resources, financial services, health care, pharmaceuticals, telecommunications, and transportation.

We are actively involved in high-profile and complex white-collar criminal defense, regulatory enforcement, and internal investigations throughout the globe, in areas including:

- Anti-Corruption / Foreign Corrupt Practices Act (FCPA)
- Antitrust / Cartel Investigations
- Anti-Money Laundering / Bank Secrecy Act
- Health Care Fraud
- LIBOR / Benchmark Rate Fixing

- Insider Trading / Market Manipulation / Securities Fraud
- False Claims Act (FCA) and Qui Tam Actions
- Mail, Wire, and Tax Fraud
- Export Controls
- Accounting Fraud

## For more information, please contact:

Timothy W. Blakely
Hong Kong
+852 25850870
tblakely@mofo.com

James J. Brosnahan
San Francisco
+1 415 268 7189
jbrosnahan@mofo.com

Somnath Raj Chatterjee
San Francisco
+1 415 268 7537
schatterjee@mofo.com

Demme Doufekias
Washington D.C.
+1 202 887 1553
ddoufekias@mofo.com

Charles E. Duross
Washington D.C.
+1 202 887 1576
cduross@mofo.com

Jordan Eth
San Francisco
+1 415 268 7126
jeth@mofo.com

Robert S. Fleishman
Washington D.C.
+1 202 887 8768
rfleishman@mofo.com

Randall J. Fons
Denver
+1 303 592 2257
rfons@mofo.com

Stephen P. Freccero
San Francisco
+1 415 268 6998
sfreccero@mofo.com

Paul T. Friedman
London
+44 20 79204006
pfriedman@mofo.com

George C. Harris
San Francisco
+1 415 268 7328
gharris@mofo.com

Roxann E. Henry
Washington D.C.
+1 202 887 1595
rhenry@mofo.com

James E. Hough
Tokyo
+81 3 3214 6752
jhough@mofo.com

Eugene Illovsky
Palo Alto
+1 650 813 5818
eillovsky@mofo.com

Thomas Keul
Berlin
+49 30 72622 1202
tkeul@mofo.com

Daniel P. Levison
Singapore
+65 69222041
dlevison@mofo.com

Carl H. Loewenson, Jr.
New York
+1 212 468 8128
cloewenson@mofo.com

Dan Marmalefsky
Los Angeles
+1 213 892 5809
dmarmalefsky@mofo.com

Daniel A. Nathan
Washington D.C.
+1 202 887 1687
dnathan@mofo.com

Eric R. Roberts
San Francisco
+1 415 268 6894
eroberts@mofo.com

Kevin Roberts
London
+44 20 79204160
eroberts@mofo.com

Ruti Smithline
New York
+1 212 336 4086
rsmithline@mofo.com

Rick Vacura
Northern Virginia
+1 703 760 7764
rvacura@mofo.com

Ronald G. White
New York
+1 212 468 8016
rwhite@mofo.com

**BEIJING**

**BERLIN**

**BRUSSELS**

**DENVER**

**HONG KONG**

**LONDON**

**LOS ANGELES**

**NEW YORK**

**NORTHERN VIRGINIA**

**PALO ALTO**

**SACRAMENTO**

**SAN DIEGO**

**SAN FRANCISCO**

**SHANGHAI**

**SINGAPORE**

**TOKYO**

**WASHINGTON, D.C.**

M O R R I S O N
F O E R S T E R

© 2015 Morrison & Foerster LLP  Because of its generality, the information provided herein may not be applicable in all situations and should not be acted upon without specific legal advice based on particular situations.

01/15