UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-v-                                          16-CR-377 (PAE)

JOHN AFRIYIE,                                OPINION AND ORDER

                Defendant.

------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Pending before the Court is a motion by non-party MSD Capital, L.P. ("MSD"), Dkt. 161 ("Mot."), seeking to vacate this Court's April 21, 2017 final order of forfeiture, Dkt. 127. MSD moves pursuant to Federal Rule of Criminal Procedure 60 and the Crime Victims' Rights Act ("CVRA"). Because defendant John Afriyie has already filed a notice of appeal challenging his sentence, the Court is compelled to dismiss MSD's motion for lack of jurisdiction. Nevertheless, to assist the Court of Appeals in the event the issue arises on appeal, and to forestall duplicative litigation in the event of a remand, the Court separately explains why, were jurisdiction proper, MSD's motion would fail on the merits.

## I. Background

### A. Afriyie's Conviction and the Court's Forfeiture Orders

      On January 30, 2017, a jury found Afriyie guilty of one count of securities fraud and one count of wire fraud. Dkt. 81. Each count was based on an insider trading scheme that Afriyie carried out during his tenure as an analyst at MSD. The evidence at trial showed that Afriyie had accessed, from MSD's confidential database, information about a plan by private equity company Apollo Global Management LLC to buy security company ADT Corporation, after Apollo had privately approached MSD about providing financing. Afriyie then purchased exotic

call options for ADT in a TD Ameritrade brokerage account he had opened in his mother's name; the options cost Afriyie less than $25,000 but, when Apollo's plan was disclosed, resulted in illicit profits for Afriyie of $1.53 million.

On February 3, 2017, the Government submitted a proposed preliminary order of forfeiture. Dkt. 84. The order was based on the trial evidence and the jury's special verdict, which found the contents of two specific properties—the TD Ameritrade account and Afriyie's separate savings account at Bank of America—to constitute or be derived from the proceeds of Afriyie's offenses. *See* Dkt. 82. Afriyie filed a letter objecting to the proposed order, Dkt. 85, but MSD, whose counsel had monitored the trial and a number of whose employees had testified at trial, did not raise any objection. On February 10, 2017, the Court entered the Preliminary Order of Forfeiture. Dkt. 87. The Preliminary Order of Forfeiture included a criminal money judgment in the amount of $2,780,720.02, a figure representing the total proceeds that Afriyie had derived from the offenses of conviction. It also ordered the forfeiture to the United States of Afriyie's interest in the two specific properties covered by the jury's special verdict—$2,632,893.39 in the T.D. Ameritrade account, and $15,969.07 in the Bank of America account. Dkt. 87.

Because the value of the specific properties was less than the amount of the money judgment embodied in the forfeiture order, the Government, on February 24, 2017, filed a motion seeking a preliminary order of forfeiture as to certain substitute assets. Dkt. 91. The Court directed that any opposition to this motion be filed by March 3, 2017. Dkt. 93. Again, Afriyie opposed the proposed order, Dkt. 131, and again MSD did not object. On May 10, 2017, the Court entered the preliminary substitute asset forfeiture order. Dkt. 130.

Each of the preliminary forfeiture orders was publicized. *See* Dkts. 125, 138. On April 21, 2017, the Court entered the final order of forfeiture, Dkt. 127, and on July 27, 2017, the day after Afriyie's sentencing, the Court entered the final substitute asset forfeiture order, Dkt. 148. On August 9, 2017, Afriyie filed a notice of appeal from his judgment of conviction, indicating his intent to appeal both his conviction and sentence. Dkt. 150.

### B. Restitution and MSD's Bid for Restoration

On July 19, 2017, in its sentencing submission, the Government argued, consistent with Second Circuit precedent, that MSD was entitled to restitution for the necessary legal fees and expenses it had incurred in assisting in the investigation and prosecution of Afriyie's insider trading. Dkt. 140 at 25–26.

On July 25, 2017, the day before sentencing, MSD made its first submission to the Court, emailing a letter setting forth the fees and expenses it had incurred and seeking restitution for these outlays.[1] Afriyie opposed restitution for MSD. Dkt. 136 at 15. At sentencing, the Court issued a bench ruling agreeing with the Government and MSD that MSD was entitled to restitution. The Court deferred entry of a restitution order pending final tabulation of the proper amount and directed the Government to submit a proposed order of restitution. *See* Dkt. 151 ("Sent. Tr.") at 51. The Court noted on the record that, three months earlier, it had signed the order of forfeiture. *Id.* at 43.

On October 27, 2017, the Government filed the proposed order of restitution, seeking $663,028.92 in restitution for MSD. Dkt. 158. The Court is issuing that order today.[2]

---

[1] The Court will issue an order today attaching this letter to ensure a complete public record.

[2] The Court will also issue a separate order explaining why this amount of restitution is proper, and why, in light of the Second Circuit's intervening decision in *United States v. Cuti*, No. 16-

3

On October 31, 2017, shortly after MSD was added to the docket as an interested party, Dkt. 160, MSD filed the instant motion asking the Court to vacate the existing order of forfeiture and order instead that the specific property which the Court had ordered forfeited be directed, in the first instance, towards payment of Afriyie's restitution obligation, Dkt. 161. MSD argues that because Afriyie lacks assets sufficient to satisfy his restitution obligation, unless the forfeited funds are "restored" and earmarked for restitution, MSD, in practice, will not be made whole for the expenses covered by the restitution order. *Id.* MSD represents that both before (on March 23, 2017) and after sentencing, it had asked the United States Attorney's Office ("USAO") to agree to use the funds forfeited to the Government by Afriyie in the first instance to discharge the restitution obligation. Dkt. 162 ("Friedlander Decl. 1") at ¶¶ 2–3. However, MSD represents that the USAO, after consulting with the Money Laundering and Asset Recovery Section ("MLARS") of the Department of Justice ("DOJ"), reported to MSD that MSD's restoration request would be denied because the types of costs covered in the restitution order—MSD's attorney's fees and costs associated with assisting the Government's investigation and prosecution of Afriyie—were not compensable under the regulations governing restoration and remission. *Id.* at ¶ 4.[3] In ensuing calls, MSD represents, the Government explained that

---

3159, 2017 WL 4176218 (2d Cir. Sept. 21, 2017), the higher figure earlier sought by the Government and MSD would have been excessive.

[3] Remission and restoration are the two primary mechanisms used by the DOJ to return forfeited assets to victims. *See* U.S. Dep't of Justice, *Asset Forfeiture Manual* 161 (2016). Remission is the process by which the Attorney General directly returns forfeited property to its owner or to the victim of the crime. *Id.* at 162. In 2002, the DOJ created an alternative procedure, restoration, which was designed "to simplify and accelerate the return of forfeited property to victims." *Id.* at 165. Restoration allows the Attorney General to transfer forfeited funds to the court, in order to satisfy a criminal defendant's restitution order. *Id.*

4

MLARS would consider restoring to MSD a separate category of outlays: any compensation MSD paid to Afriyie during the period covered by his offenses. Friedlander Decl. 1 at ¶ 5.[4]

The Court directed MSD and the Government to confer in hopes of mooting the controversy. Dkt. 163. When these efforts failed, the Government, on November 7, 2017, submitted an opposition to MSD's motion. Dkt. 164 ("Opp."). On November 29, 2017, MSD submitted a reply. Dkt. 172 ("Reply").

## II. Discussion

### A. Jurisdiction

In light of Afriyie's pending appeal, the Court lacks jurisdiction to decide MSD's motion. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Although Afriyie has not yet filed a brief on appeal, he objected before this Court to entry of both the restitution order, Dkt. 136 at 15, and the forfeiture orders, Dkt. 123, and has since filed a notice of appeal concerning the "judgment entered in this action on July 28, 2017." Dkt. 150. An appeal from a criminal judgment "incorporates both the adjudication of guilt and sentence," *United States v. Caltabiano*, 871 F.3d 210, 214–15 (2d Cir. 2017), and "criminal forfeiture is an element of the sentence," *Libretti v. United States*, 516 U.S. 29, 41 (1995). MSD itself concedes that Afriyie "may contest on appeal the forfeiture . . . amount." Reply at 2.

Under these circumstances, this Court is without authority to "rule on any motion affecting an aspect of the case that [is] before the [Court of Appeals]." *Ching v. United States*,

---

[4] The Government represents that it has encouraged MSD to petition MLARS directly to request that the forfeited funds be subject to remission or restoration, but that MSD has not done so. *See* Dkt. 164 at 2. MSD explains that it views such a petition as futile. Dkt. 172 at 5.

5

298 F.3d 174, 180 n.5 (2d Cir. 2002). Because the forfeiture order is properly before the Court of Appeals, the Court is compelled to dismiss MSD's motion to vacate.

**B.     Merits**

In the interest of judicial economy,[5] the Court now explains why, if jurisdiction were proper, the Court would nevertheless deny MSD's motion to vacate the existing forfeiture order as to the specific properties and substitute a new order prioritizing payment of the restitution obligations. MSD correctly notes that the CVRA guarantees to victims certain rights, including "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). And at sentencing, consistent with the CVRA, this Court ruled preliminarily that MSD is entitled to restitution, which it then valued at $691,046.42. *See* Sent. Tr. at 51. By that time, however, the Court had already issued a final order of forfeiture, Dkt. 127, as well as a preliminary forfeiture order regarding substitute assets, Dkt. 130. Both of those orders were properly publicized, as required by 21 U.S.C. § 853(n)(1), Dkts. 125, 138, and the final substitute asset order issued on July 27, 2017, Dkt. 148. At no point during these events did MSD raise an objection or otherwise request that the Court prioritize restitution over forfeiture. On the contrary, MSD first surfaced before the Court to make this request months later, on October 26, 2017.

MSD now urges the Court to vacate the April 21, 2017 final forfeiture order. Mot. at 1. The request comes too late and by means of an improper vehicle. "Once the Government has

---

[5] Federal Rule of Criminal Procedure 37, promulgated in 2012, appears to permit a court to deny a motion "that the court lacks authority to grant because of an appeal that has been docketed and is pending." Fed. R. Crim. P. 37(a)(2). The Court has some doubt as to whether denial of such a motion on the merits, as opposed to dismissal for want of jurisdiction, would be consistent with the jurisdictional holdings of the cases described above. It is, after all, well settled that the federal courts may not "extend by rule" the judicial power authorized by the Constitution. *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992). The Court accordingly offers the ensuing merits discussion not as a formal "denial" of MSD's motion, but as an explanation why—in the event there later comes occasion to substantively address this motion—it would lack merit.

secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n)." *Libretti*, 516 U.S. at 44; *United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015) ("We have consistently interpreted § 853(k) to mean that an ancillary proceeding under § 853(n) is the *only* avenue for a post-indictment third-party claim to forfeited property." (internal quotation marks omitted)). Section 853(n)(2) provides that "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice . . . , petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2).

Although MSD sought restoration from the Government on March 23, 2017, Friedlander Decl. Ex. A. at 1, it did not at any point seek a § 853(n)(2) hearing, and it first filed the instant motion some six months after the final order of forfeiture issued. Because MSD failed to timely pursue a § 853(n)(2) hearing, MSD may not now assert a legal interest in the forfeited property.

Nor do Rule 60 and the CVRA provide relief. The CVRA guarantees only that a victim receive "full and timely restitution *as provided in law*." 18 U.S.C. § 3771(a)(6) (emphasis added). Now that the relevant assets have been judicially forfeited, the authority to distribute those funds is vested by law in the Attorney General, who has delegated his authority to the chief of MLARS. *See* 21 U.S.C. § 853(i)(1); 28 C.F.R. § 9.1(b)(2). Although the Government and MSD dispute whether MLARS is correct that the fees and expenses MSD incurred are eligible for remission or restoration, *compare* Opp. at 4–5, *with* Reply at 5, MSD itself recognizes that MLARS, not this Court, controls the allocation of funds that have already been forfeited, *see* Mot. at 12 (citing *United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011)).

Under these circumstances, with MSD having foregone a § 853(n)(2) hearing and having failed to pursue before the Court the relief it seeks until long after the final forfeiture order issued, judicial review would not be appropriate, as the DOJ's choice between "restoration and retention" of forfeited funds is a "matter of discretion." *Pescatore*, 637 F.3d at 137. At this juncture, therefore, MSD must seek relief directly from the DOJ, rather than the Court. *See United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013) ("Reallocating [already forfeited] funds to restitution at this point would mean using *government* assets to satisfy [the defendant's] obligation . . . ."), *aff'd* 798 F.3d 84 (2d Cir. 2015); *United States v. Rubin*, 558 F. Supp. 2d 411, 426–27 (E.D.N.Y. 2008) ("[N]o law transforms forfeiture into a pool for restitution, nor does any law peg prejudgment assets of the accused to restitution as does the law of forfeiture peg for forfeiture assets directly traceable to an actual offense."). And even if judicial review were available as to a formal administrative decision by MLARS to deny use of the forfeited funds for MSD's benefit, MSD has not formally pursued such relief. It has conveyed its requests to MLARS only informally, through the United States Attorney as intermediary, and MLARS's evident refusal to grant one form of restoration has in turn been conveyed to MSD only informally through the USAO. Informed judicial review would require a clearer record, both as to the parties' submissions and as to the final administrative decision. *Cf. McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted . . . . And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration . . . ." (citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court dismisses MSD's motion. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 161.

SO ORDERED.

Dated: December 11, 2017
      New York, New York

                                     PAUL A. ENGELMAYER
                                     United States District Judge